Agnes BERGEN, Administratrix of the Estate of Thomas Karl Kauppinen; Shannon Lee Youhas Jobe, Administratrix of the Estate of James E. Jobe; Robert Kidd; P.G. Pair, Administrator of the Estate of Wilson Lee Pair; Frank Romero, Personal Representative of the Estate of Ronnie Newton; Thomas R. Ryker, Personal Representative of the Estate of Randall Ray Ryker; James R. Sandin, Personal Representative of the Estate of Vanessa N. Sandin; Salome B. Smith, Administratrix of the Estate of Charles Wayne Parlett; Willard Gary Stallings, Personal Representative of the Estate of Gary Todd Stallings; Flora B. Stigall and Joel L. Stigall, individually and as Administrators of the Estate of Clifford S. Stigall, Wallace R. Thomas; Robert O. Washburn and Blanche Washburn, dba Marine Transportation, Plaintiffs-Appellees,

v.

F/V ST. PATRICK; St. Patrick, Inc., Daniel Whorton; Leroy Whorton; and William Wilson, Defendants-Appellants.

No. 86–3900.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1987.

Decided May 7, 1987.

Gerald W. Markham, Kodiak, Alaska, and James J. Rhodes, Anchorage, Alaska, for plaintiffs-appellees.

Richard A. Nielson, Jr., Anchorage, Alaska, for defendants-appellants.

Before GOODWIN, SCHROEDER and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

## BACKGROUND

In October 1980, Daniel Whorton, Leroy Whorton, and a third investor formed a Virginia corporation to purchase and outfit the fishing vessel St. Patrick for scallop fishing in Alaska. William Wilson purchased the third investor's 50% share in the enterprise in 1981.

The master and mate hired for the St. Patrick had considerable experience in fishing the North Atlantic. In September 1981, after an informal Coast Guard inspection of the boat in Anchorage, the owners were informed that the officers had to be licensed by the Coast Guard to sail outside territorial waters. The owners gave license applications to the vessel's officers, but the forms were never completed. The owners allowed the boat to go scallop fishing anyway. Two fishing operations were successfully completed in October and November 1981.

In late November, the boat's master made a temporary, unexpected departure,

and the mate became acting master. The owners, aware of the master's absence and that the mate remained unlicensed, allowed the boat to continue fishing outside territorial waters. A storm arose while the St. Patrick was fishing 13 miles from shore. In heavy seas, the acting master kept the boat broadside to the waves despite suggestions from the crew that this was dangerous. A large wave rolled the boat on its side, causing considerable flooding and damage. The acting master ordered the crew to abandon ship. Ten of the crew including the acting mate eventually died from the cold. Two survived, but were badly injured and emotionally scarred. The boat was later found floating near the point of its abandonment.

The district court found the owners liable for negligence and for the unseaworthiness of the vessel. It found that the owners were guilty of "gross, willful and wanton misconduct" in failing to provide a competent, licensed master and mate for the St. Patrick. It awarded punitive damages as well as damages for pre-death pain and suffering, and a separate sum representing damages for loss of support, services, and inheritance to the estates of those crew members who died in the accident. As an alternative to the single sum for loss of support, services, and inheritance, the court gave a figure for loss of services alone, "[i]n the event that it is subsequently determined on any appeal that only a loss of services is recoverable." To the two surviving crew members, the court awarded punitive damages, and damages for pain and suffering, emotional trauma, disability, and loss of future earnings. The owners do not contest liability, nor do they appeal the awards for pre-death pain and suffering under the Jones Act. They appeal the awards of punitive damages, the award for support, services,

and inheritance as to all decedents but James Jobe, and the size of the awards to the two survivors.

## DISCUSSION

### 1. PUNITIVE DAMAGES

The trial court concluded as a matter of law that punitive damages were available under the general maritime law to the two survivors and to the estates of the nine decedents. Based on its factual finding that the owners' negligence had been "wanton, willful and intentional," the trial court awarded punitive damages to all plaintiffs. We review *de novo* the legal conclusion that punitive damages are available. *United States ex rel Morgan & Son Earth Moving, Inc. v. Timberland Paving & Const. Co.,* 745 F.2d 595, 599 (9th Cir. 1984). We review for clear error the trial court's factual findings in support of an award of damages. *Id.*

Only pecuniary damages are available under the Jones Act, 46 U.S.C. § 688, and under the Death on the High Seas Act. 46 U.S.C. § 762; *see also Kopczynski v. The Jacqueline,* 742 F.2d 555, 561 (9th Cir. 1984) (Jones Act), *cert. denied,* 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985); *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 623, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581 (1978) (DOHSA); *Nygaard v. Peter Pan Seafoods, Inc.,* 701 F.2d 77, 79 (9th Cir.1983) (DOHSA). Punitive damages are non-pecuniary damages unavailable under the Jones Act. *Kopczynski,* 742 F.2d at 561. Punitive damages are therefore also unavailable under DOHSA.

The issue on appeal, however, is whether punitive damages available under the general maritime law may *supplement* the remedies available under DOHSA or the Jones Act.[1] In analyzing the availability of

---

1. Whether or when punitive damages are available under the general maritime law is not entirely clear. In a maritime action that included no Jones Act claims, we held that punitive damages were available. *Protectus Alpha Navigation Co., Ltd. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379, 1385 (9th Cir.1985). Only the Fifth Circuit has held that punitive damages are available when an unseaworthiness claim is joined with a Jones Act claim. *Complaint of*

*Merry Shipping, Inc.,* 650 F.2d 622, 624–27 (5th Cir.1981). Other circuits have rejected punitive damages in actions for unseaworthiness. *See Complaint of Cambria S.S. Co.,* 505 F.2d 517, 523 n. 11 (6th Cir.1974), *cert. denied,* 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975); *In re Marine Sulphur Queen,* 460 F.2d 89, 105 (2d Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 318, 326, 34 L.Ed.2d 246 (1972); *see also* Note, *Punitive Damages in Admiralty,* 18 Hastings L.J. 995

punitive damages, the court did not distinguish between the survivors' actions—which included claims under the Jones Act and the general maritime law—and the decedents' actions—which included claims under the Jones Act, the Death on the High Seas Act, and the general maritime law. The court also failed to clarify whether DOHSA applied to the decedents. To review the trial court's award of punitive damages we must first determine which statute was being supplemented by which punitive damage awards.

### A. Punitive Damages for the DOHSA Plaintiffs

The threshold question is whether the Death on the High Seas Act applies at all. The trial court's findings leave this in doubt. Although the trial court stated generally that its jurisdiction arose under DOHSA, as well as under the Jones Act and general maritime law, it did not indicate how DOHSA applied. It concluded that personal injury and death resulted from the operation of the St. Patrick on the high seas. But it also found that most of the decedents died after drifting back within territorial waters and that negligence originating onshore and within territorial waters contributed to the accident. Plaintiffs cite these findings in support of their contention that DOHSA was not the basis for the court's damage awards. We reject this argument.

■ The Death on the High Seas Act applies "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas." 46 U.S.C. § 761. This provision has been held to refer to the site of an accident on the high seas, not to where death actually occurs or where the wrongful act causing the accident may have originated. *Lacey v. L.W. Wiggins Airways, Inc.*, 95 F.Supp. 916, 918 (D.Mass.1951); *accord Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 599–600 & n. 5, 94 S.Ct. 806, 822 & n. 5, 39 L.Ed.2d 9 (1974) (Powell, J., dissenting on other grounds). It is therefore irrelevant that some of the St. Patrick's crew may have died in territorial waters. *See Touh-*

*ey v. Ross-Loos Medical Group*, 111 Cal. App.3d 958, 168 Cal.Rptr. 910 (1980) (applying DOHSA where decedent was injured aboard ship on the high seas, but died of his injuries more than a year later in a hospital onshore). It is also irrelevant that decisions contributing to the St. Patrick's unseaworthiness may have occurred onshore or within territorial waters. *See Chute v. United States*, 466 F.Supp. 61, 64 (D.Mass.1978); *Wilson v. Trans-Ocean Airlines*, 121 F.Supp. 85, 92 (N.D.Cal.1954). DOHSA applies to plaintiffs' suits because the St. Patrick's accident causing death occurred on the high seas.

Where DOHSA applies, its pecuniary remedies cannot be supplemented by non-pecuniary damages available under the general maritime law. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. at 624–25, 98 S.Ct. at 2014–15 (barring damages for loss of society under the general maritime law). Nor can DOHSA be supplemented by non-pecuniary damages available under state law. *Offshore Logistics, Inc. v. Tallentire*, — U.S. —, 106 S.Ct. 2485, 2498, 91 L.Ed.2d 174 (1986) (barring damages for loss of society under state law). The Supreme Court based these holdings on its view that:

> [t]he Death on the High Seas Act ... announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages.... The Act does not address every issue of wrongful-death law, ... but when it does speak directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes meaningless.

*Higginbotham*, 436 U.S. at 625, 98 S.Ct. at 2015.

Plaintiffs argue that the unique purpose of punitive damages differentiates them from the type of non-pecuniary damages that *Higginbotham* barred. As the plaintiffs point out, the Supreme Court said that "[t]here is a basic difference between filling a gap left by Congress' silence and

(1967) (punitive damages not then available in      an unseaworthiness action).

rewriting rules that Congress has affirmatively and specifically enacted." *Id.* Plaintiffs argue that DOHSA is a remedial statute and that punitive damages fill a "gap left by Congress' silence." It is true that punitive damages have nothing to do with losses suffered. Their purpose is punishment and deterrence. *Memphis Community School Dist. v. Stachura,* —— U.S. ——, 106 S.Ct. 2537, 2542 n. 9, 91 L.Ed.2d 249 (1986); *Protectus Alpha Navigation Co., Ltd. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379, 1385 (9th Cir.1985). Nonetheless, *Higginbotham* and *Tallentire* make it clear that Congress intended DOHSA to preempt anything but pecuniary damages where DOHSA applies. "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of non-pecuniary supplements." *Higginbotham,* 436 U.S. at 625, 98 S.Ct. at 2015. The pecuniary remedies available under DOHSA therefore cannot be supplemented by punitive damages under the general maritime law.

■ Plaintiffs contend that if punitive damages under the general maritime law cannot supplement DOHSA remedies, then punitive damages can supplement the awards they received under the Jones Act for decedents' pain and suffering before death.[2] We reject this argument. Since few deaths at sea are instantaneous, many DOHSA plaintiffs qualify for Jones Act remedies for pre-death pain and suffering. If all of those actions could be supplemented by the general maritime law, DOHSA's preemption of maritime law would be nullified. We hold that where an action under DOHSA is joined with a Jones Act action, neither statutory scheme may be supplemented by the general maritime law or by state law.

### B. Punitive Damages for the Survivors.

The trial court granted the two survivors punitive damages under the general maritime law. The owners challenge the factual rather than the legal basis for those awards. We review for clear error the trial court's factual findings in support of a punitive damages award. *United States ex rel Morgan & Son Earth Moving, Inc. v. Timberland Paving & Const. Co.,* 745 F.2d 595, 599 (9th Cir.1984).

■ The trial court's factual findings are not sufficient to support its punitive damage awards to the two survivors. If lawfully available in an unseaworthiness action, punitive damages could be granted where "a shipowner has willfully violated the duty to furnish and maintain a seaworthy vessel." *Complaint of Merry Shipping, Inc.,* 650 F.2d 622, 625 (5th Cir.1981).[3] The trial court found such willful conduct in the owners' "disregard" of the statutory requirement that the officers of the St. Patrick be licensed for operations on the high seas. *See* 46 U.S.C. § 224a.

As the trial court found, it was negligence *per se* for the St. Patrick to sail on the high seas without properly licensed officers. The record supports the trial court's finding that the owners knew that the ship was operating in violation of the licensing requirement. It also reflects that the owners knew that the officers had obtained licensing forms. The trial court did not reject this evidence. The court could properly conclude that the lack of licenses proved negligence, but more was required to prove "willful" conduct justifying puni-

---

**2.** These awards are not contested by the owners and are clearly lawful. *See Cook v. Ross Island Sand and Gravel Co.,* 626 F.2d 746, 748–49 (9th Cir.1980).

**3.** Because the factual basis for the awards is clearly erroneous, we need not resolve the legal issue of the availability of punitive damages. To affirm the awards of punitive damages, of course, we would have had to review the owners' concession that there is a legal basis for the awards. " '[W]e are not bound by a party's erroneous view of the law.' " *Avila v. INS,* 731

F.2d 616, 620 (9th Cir.1984) (quoting *Flamingo Resort, Inc. v. United States,* 664 F.2d 1387, 1391 n. 5 (9th Cir.), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 446, 74 L.Ed.2d 602 (1982)). We have thus far not followed the Fifth Circuit in permitting punitive damages under the general maritime law where, as here, an unseaworthiness action is joined to an action under the Jones Act. *See Complaint of Merry Shipping,* 650 F.2d at 624–27. As the trial court correctly observed, that issue is left open by our decision in *Kopczynski,* 742 F.2d at 560.

tive damages. Nothing more was shown. We are therefore compelled to conclude that the trial court's findings in support of its award of punitive damages to the two survivors are clearly erroneous.

## 2. DAMAGES FOR LOSS OF SERVICES, SUPPORT, AND INHERITANCE

The trial court awarded damages for loss of services, support, and inheritance to the wife and child of James Jobe, the only married decedent. To the parents of the other decedents, the court awarded damages for loss of services, support, and inheritance, with alternative, smaller awards in case only loss of services was found to be recoverable. The court found that Jobe's wife and child were dependent on him and that "the named parents of the other deceased ... were dependent upon their children for services and future support and are entitled to the pecuniary value thereof." The availability of damages under a statute is a legal question that we review *de novo. United States ex rel Morgan & Son*, 745 F.2d at 599. We review for clear error the trial court's factual findings in support of an award of lawfully recoverable damages. *Id.*

Because DOHSA preempts state wrongful death law, *Offshore Logistics, Inc. v. Tallentire*, ── U.S. ──, 106 S.Ct. 2485, 2500, 91 L.Ed.2d 174 (1986), claimants are entitled only to the pecuniary damages available under DOHSA. Loss of support, services, and inheritance are pecuniary damages available under DOHSA. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. at 584–86, 94 S.Ct. at 814–16 (1974) (loss of support and services); *Nygaard v. Peter Pan Seafoods, Inc.*, 701 F.2d 77, 80 (9th Cir.1983) (loss of inheritance). Any damage award must be proved and be reasonably certain. *Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). "Although damages need not be proved to a mathematical certainty, 'sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture.'" *Id.* (quoting *Rochez Brothers v. Rhoades*, 527 F.2d 891, 895 (3d Cir.1975)). Recovery under DOH-

SA for loss of support "includes all the financial contributions that the decedent would have made to his dependents had he lived." *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 584–85, 94 S.Ct. 806, 814, 39 L.Ed.2d 9 (1974). Therefore, as the trial court recognized, recovery for loss of support requires some showing of dependence on the deceased or an expectation of support. Damages for loss of services require proof that such services were expected and likely to be provided, but for the wrongful death. *See id.* at 585, 94 S.Ct. at 815. Damages for loss of inheritance require proof that the decedent, but for his death, would probably have accumulated property that the wrongful death beneficiary would have inherited. *Nygaard v. Peter Pan Seafoods*, 701 F.2d at 80. The factual findings supporting such proof must be comprehensive enough to provide a basis of decision and must be fairly supported by the record. *Clady v. County of Los Angeles*, 770 F.2d 1421, 1433 (9th Cir.1985), *cert. denied*, ── U.S. ──, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986). The record fairly supports only part of the trial court's awards for loss of support, services, and inheritance.

■ The court made specific findings of dependency as to the wife and child of James Jobe and as to the quadriplegic mother and totally disabled father of Clifford Stigall. As to the parents of the other decedents, the court made a more general finding that they "were dependent upon their children for services and future support and are entitled to the pecuniary value thereof." While there is evidence from which the court could have made findings regarding parental dependency of the Stigalls, no evidence was introduced from which the trial court could find that any of the other parents were dependent on their deceased children or expected to receive significant services from them. We must therefore hold that the other findings of dependency and services are clearly erroneous. We recognize the parents' tragic loss of love and companionship from their deceased children. But loss of society is nonpecuniary and therefore not recoverable

under DOHSA. *Higginbotham,* 436 U.S. at 624–25, 98 S.Ct. at 2014–15.

■ Similarly, the court's awards to parents for loss of inheritance find no support in the record. In the ordinary course, it is improbable that parents will inherit from children. *See Thompson v. Offshore Co.,* 440 F.Supp. 752, 763 (S.D.Tex.1977). The trial court made no factual findings that overcome this improbability. Speculation cannot support an award for loss of inheritance. *Nygaard v. Peter Pan Seafoods,* 701 F.2d at 80. The same inference does not apply to James Jobe, who had a wife and child. The record therefore fails to provide a basis for finding clear error in the trial court's award of damages for loss of inheritance to Jobe's wife and child.

### 3. TAXATION ON FUTURE EARNINGS AND INHERITANCE

The owners contend that any damages for loss of support, services, or inheritance—which are based on calculations of future earnings—must be reduced to account for taxation of those earnings. As with other factual aspects of damage awards, we review for clear error. *United States ex rel Morgan & Son,* 745 F.2d at 599.

■ We have held that a district court may admit evidence of the effect of taxation in calculating damages based on future earnings. *Rudelson v. United States,* 602 F.2d 1326, 1331 (9th Cir.1979); *Sauers v. Alaska Barge,* 600 F.2d 238, 247 (9th Cir.1979). We have specifically rejected a rule requiring the admission of such evidence. *Burlington Northern, Inc. v. Boxberger,* 529 F.2d 284, 294 (9th Cir.1975). Moreover, the owners did not raise this issue at trial. Other circuits have refused to consider this issue on appeal where the appellant did not seek to introduce evidence relating to taxation at trial. *See Deakle v. John E. Graham & Sons,* 756 F.2d 821, 830–31 (11th Cir.1985); *Fanetti v. Hellenic Lines Ltd.,* 678 F.2d 424, 432 (2d Cir.1982), *cert. denied,* 463 U.S. 1206, 103 S.Ct. 3535, 77 L.Ed.2d 1387 (1983). We therefore find no clear error in the calculations of future

earnings that are the basis for the damage award to the family of James Jobe.

### 4. FUTURE EARNINGS OF DECEDENT PLANNING TO RETURN TO VIRGINIA

The district court based its damage awards on estimates of future earnings for Alaska scallop fishermen. The owners contend that the award for James Jobe must be adjusted because of testimony at trial that he had intended to return to Virginia to work in another type of fishing. An award of damages will be overturned only if it is clearly unsupported by the evidence. *Chalmers v. City of Los Angeles,* 762 F.2d 753, 760 (9th Cir.1985).

■ The record established that Jobe had a wife and child in Virginia, and there was testimony at trial that he planned to return there rather than remain in Alaska. Scallop fishing in Alaska was, however, his job at the time of his death. The trial court could have properly concluded that any other evidence about Jobe's future plans was too speculative to substantiate a reduction in the award. We find no clear error in the court's calculation of Jobe's future earnings as an Alaska scallop fisherman.

### 5. PERSONAL LIABILITY OF THE OWNERS

■ The trial court held the owners personally liable on two alternative grounds: (1) they were liable as shareholders because the St. Patrick corporation was an "artifice and a sham," and (2) they were liable as corporate officers because they had participated in a tort committed by the corporation. Because we find no clear error in the trial court's disregard of the St. Patrick's corporate entity, we need not reach the issue of the owners' liability as officers participating in corporate torts.

In deciding whether to disregard the corporate entity and hold shareholders personally liable for debts of the corporation, courts consider three factors: the amount of respect given to the separate identity of the corporation by its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and

fraudulent intent in the formation of the corporation. *Laborers Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, Inc.,* 736 F.2d 516, 524 (9th Cir.1984); *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1111 (9th Cir.1979). We review for clear error the factual findings that underlay the court's piercing of the corporate veil. *Laborers Clean-Up,* 736 F.2d at 523.[4]

The district court found that the level of capitalization of the corporation was sufficiently low to constitute fraud. *See Laborers Clean-Up,* 736 F.2d at 524. Recognizing the corporate form would work an injustice, the court found, because "[y]oung seamen employed on large fishing vessels such as the St. Patrick have a right to expect (with their limited knowledge of corporate laws) that the operation is at least sufficiently capitalized to insure compliance with the basic laws for their safety such as the Officer Competency Act, 46 U.S.C. § 224(a)." The record reflects intermingling of personal and corporate funds, the lack of a company bank account, the absence of organizational minutes, the failure to file corporate tax returns, and the failure to pay dividends. All of this supports the court's conclusion that the corporation's activities "in reality were those of William Wilson, J. Leroy Whorton, and Daniel Whorton."

## 6. EVIDENTIARY MATTERS

### A. Testimony of Captain Burke

The owners dispute the admission of certain testimony by Phillip Burke, captain of The Pursuit, another scallop boat in Alaska. The trial court has broad discretion to admit expert testimony, and we will sustain

the court's action unless it is "manifestly erroneous." *Taylor v. Burlington Northern R. Co.,* 787 F.2d 1309, 1315 (9th Cir. 1986).

After considerable voir dire, the trial court ruled that Captain Burke's testimony as to earnings of other scallop boats was incompetent as based on hearsay. It was ordered disregarded.[5] On cross-examination, however, counsel for the owners asked whether the earnings of Captain Burke's boat were higher than those of other Alaska scallop boats. On redirect, plaintiffs' attorney asked Burke whether the earnings of his boat were average or above average for the industry. The owners' counsel objected that the court had already ruled that such testimony by Captain Burke was incompetent. The trial court ruled that the testimony could stand on redirect because owners' counsel had elicited testimony on the same subject in his cross-examination.

The owners argue on appeal that counsel's questions on cross-examination were voir dire, probing the basis for Captain Burke's expert testimony. But the court had already ruled that Burke's testimony as to the earnings of other boats would be disregarded, so there was no need for further voir dire on that issue. Where counsel elicits inadmissible evidence in cross-examination, he waives the right to object to admission of that evidence on redirect. *Burgess v. Premier Corp.,* 727 F.2d 826, 834 (9th Cir.1984); *see also* 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 103(02), at 14–16 & n. 67 (1986). We need not decide whether this "opening the door" principle applies where, as here, the court had already ruled that certain evidence was inadmissible. If there was

---

**4.** The owners argue that the district court erred as a matter of law by failing to make any findings on the issue of fraudulent intent in the formation of St. Patrick, Inc. But the court's finding that "the corporation was an artifice and a sham designed to execute illegitimate purposes" goes to fraudulent intent.

**5.** It would not have been an abuse of discretion for the trial court to admit the evidence and then permit an inquiry on cross-examination as to the reliability of the hearsay upon which Captain Burke relied in forming his opinion on

the earnings of other fishing boats. "The relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility." *Taenzler v. Burlington Northern,* 608 F.2d 796, 798 n. 3 (8th Cir.1979). "The weakness in the underpinnings of [expert] opinions may be developed upon cross-examination and such weakness goes to the weight and credibility of the testimony." *Polk v. Ford Motor Co.,* 529 F.2d 259, 271 (8th Cir.), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976).

error, it was harmless. There is no question that Captain Burke was competent to testify as to the earnings of his own ship. The record includes other evidence besides the testimony of Captain Burke to support the trial court's finding that earnings of the Pursuit were probative of expected earnings of the St. Patrick. The two boats were of similar size and design, larger and more powerful than other Alaska scallop boats. Captain Burke's brief answers to questions on redirect were not prejudicial.

### B. Earnings Records of the Pursuit

The owners also challenge the admission at trial of earnings records for the Pursuit. They contend that the records were not properly authenticated. An independent bookkeeper prepared the records, but she was not present at trial for examination and the expert witness did not have an independent recollection of them. The owners claim that this violates the hearsay rule. We review the trial court's evidentiary ruling for abuse of discretion. *Kisor v. Johns-Manville Corp.,* 783 F.2d 1337, 1340 (9th Cir.1986).

██ The business records exception to the hearsay rule allows the admission of systematically entered records without the necessity of locating and calling as a witness the individual who kept them. Fed.R. Evid. 803(6); *see, e.g., City of Phoenix v. Com/Systems, Inc.,* 706 F.2d 1033, 1037–38 (9th Cir.1983). The record reflects an adequate foundation for admitting the Pursuit's earnings records under rule 803(6). We find no abuse of discretion in the admission of those records.

### REVISED AWARDS

Consistent with our review, we modify the trial court's damage awards to the plaintiffs as follows:

A. *Wallace Thomas* is entitled to recover:

| | |
|---|---|
| a. For the terror of the accident, abandoning ship at sea, intense pain and cold, the emotional trauma of watching his shipmates die, and fear and anxiety prior to rescue | $200,000.00 |
| b. For severe long term debilitating physical, mental and emotional damage, including severe depression rendering him unable to cope with his daily life, causing him irrational and unfounded feeling of guilt | $225,000.00 |
| TOTAL | $425,000.00 |

B. *James Jobe*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| b. For lost support, services and loss of inheritance to the wife and child of James Jobe | 2,119,992.00 |
| c. For loss of nurture to his minor child | 51,000.00 |
| TOTAL | $2,370,992.00 |

C. *Vanessa Sandin*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| TOTAL | $200,000.00 |

D. *Gary Todd Stalling*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| TOTAL | $200,000.00 |

E. *Thomas Kauppinen*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| TOTAL | $200,000.00 |

F. *Ronnie Lee Newton*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| TOTAL | $200,000.00 |

G. *Randy Ryker*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| TOTAL | $200,000.00 |

H. *Charles Parlett*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| TOTAL | $200,000.00 |

I. *Wilson Pair*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |
| TOTAL | $200,000.00 |

J. *Clifford Stigall*'s estate is entitled to recover:

| | |
|---|---|
| a. For conscious pre-death pain and suffering | $200,000.00 |

b.  For loss of support and services to his parents  150,000.00
 TOTAL  $350,000.00

**K.** *Robert Kidd* is entitled to recover:

a.  For future foreseeable maintenance and cure  $50,000.00

b.  For the terror of the accident, abandoning ship at sea, intense pain, cold and the emotional trauma of seeing his friend Doc Stigall disappear  $200,000.00

c.  For pain and suffering from rescue to trial  $100,000.00

d.  For permanent disability of the loss of his feet and their deformity as testified to by Dr. Mills  $150,000.00

e.  For past and lost future income  $2,255,837.00

f.  For future pain from surgeries and hospitalization  $100,000.00
 TOTAL  $2,855,837.00

Each party shall bear its own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART.