**Juanita FAVALORO, etc., et al., Plaintiffs,**

v.

**S/S GOLDEN GATE, etc., et al., Defendants.**

**Nos. C–86–3068 MHP, C–86–3075 MHP, C–86–6516 MHP, C–86–6530 MHP, C–86–6531 MHP and C–87–0010 MHP.**

United States District Court, N.D. California.

Nov. 27, 1987.

John F. Meadows, Russell P. Brown, Meadows, Smith & Brown, San Francisco, Cal., for United Nat. Ins. Co.

Quentin L. Kopp, William F. Fitzgerald, Kopp & Di Franco, San Francisco, Cal., for Favaloro, Tom Lazio Fish Co., Inc.

Charles S. Donovan, Peter A. Lindh, Walsh, Donovan, Lindh & Keech, San Francisco, Cal., for Peter Leib.

George W. Nowell, John S. Covell, Law Offices of George W. Nowell, San Francisco, Cal., for K. Delancey, Ramon P. Mairaya, James Longley.

Robert C. Chiles, Hall, Henry, Oliber & McReavy, A Professional Corporation, San Francisco, Cal., for David Hilger.

Perry D. Litchfield, John Starbuck, Law Offices of Perry D. Litchfield, San Rafael, Cal., for Ingargiolas.

David Luis Haist, Hayward, Cal., in pro per.

Elizabeth Susan Stanley Hayes, Hayward, Cal., in pro per.

Jeffrey R. Walsh, Henning, Walsh & Ritchie, San Francisco, Cal., for Favaloro et al.

Mark O. Kasanin, Jack G. Knebel, Andrew I. Port, Pecos Bill Field, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for Keystone Tankship Corp., Keystone Shipping Co.

## ORDER

PATEL, District Judge.

This case consolidates several actions filed as a result of the sinking of the Jack Jr. fishing boat on May 26, 1986. Plaintiffs are survivors of the boat's skipper and of a crew member and the Tom Lazio Fish Company, Inc., an owner of the Jack Jr.[1] They assert several causes of action, including wrongful death, pain and suffering, property damages, fraud and spoliation of evidence. Defendants include various officers and crew members of the S.S. Golden Gate, a tanker that allegedly collided with the Jack Jr. and caused its demise, as well as the companies that own and operate the tanker.

Defendants move to dismiss the complaints on several grounds: (1) the wrongful death claims must be brought by each decedent's personal representative, but neither personal representative is a named plaintiff; (2) plaintiffs failed to allege an ownership interest in the Jack Jr. to support a claim for property damage; (3) the state claims are preempted by the Death on the High Seas Act ("DOHSA"), 46 U.S.C. App. §§ 761–768, and general maritime law; (4) even if all state claims are not preempted they must fail for lack of jurisdiction since diversity—although alleged—does not exist; (5) punitive damages are not available under DOHSA; (6) a jury trial is not available for maritime claims; and (7) plaintiffs lack standing to bring an action regarding the United States Coast Guard investigation of defendants with respect to the sinking of the Jack Jr. In the alternative to dismissal, defendants move to strike or for more particularity in the pleading. Defendants also make a motion to stay the proceedings until the statute of limitations expires for criminal charges that may be

---

1. United National Insurance Company, insurer for the Jack Jr., Jack Favaloro and the Tom Lazio Fish Company, Inc., was originally a plaintiff in the action against the captain and crew of the S.S. Golden Gate. The parties stipulated to a removal of the company as a party plaintiff. The claims of the company were therefore dismissed without prejudice prior to the hearing of the motions before the court today.

filed against them or until the disposition of such charges, if ever filed, become final.

Although plaintiffs concede that some of their claims must be amended and ask for leave to do so, they contest complete pre-emption by maritime law and claim they have a right to sue for fraud upon the Coast Guard and related spoliation of evidence.

Based on the numerous defects in the existing complaints, the court grants the motions to strike and for more definite statement as to several claims and orders the consolidated amendment of the complaints, all in accordance with this order. The motion to stay the proceedings is denied as defendants have failed to demonstrate sufficient prejudice to support such a drastic measure at this time.

FACTS

Early on the foggy evening of May 26, 1986, Jack Favaloro, skipper of the Jack Jr., was fishing with his two-man crew approximately seven miles west of Point Reyes, California. Plaintiffs allege that the S.S. Golden Gate collided with and sank the Jack Jr. while it was floating still in the water as the crew was bringing in a fishing net. Plaintiffs allege that the tanker's crew failed to keep a safe distance from the Jack Jr., even though they knew of the fishing boat's location by radar and radio contact. Plaintiffs further allege that the S.S. Golden Gate continued on its northbound course after the collision and only returned to look for survivors forty-five minutes after the incident and upon request of the Coast Guard and another fishing boat.

Plaintiffs charge defendants with violating various rules under the International Regulations for Preventing Collisions at Sea, 1972, 33 U.S.C. foll. § 1602 and other rules promulgated for navigation safety.

Although the Coast Guard has investigated the circumstances of the collision, the court has not seen any results of the investigation. With respect to this investigation, plaintiffs allege that defendants acted fraudulently by concealing evidence and thereby damaged plaintiffs by limiting the information they could use in this action.

Procedurally, this litigation involves several actions by the various plaintiffs and two limitation actions. These actions have been consolidated for disposition before this court.

DISCUSSION

Defendants make several motions challenging the sufficiency of the complaints filed in this case. In ruling on the motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id., quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

While the complaints suffer from numerous infirmities, some conceded by the plaintiffs, dismissal is not justified at this stage of the proceedings. The facts alleged could, if properly pleaded, state several claims for relief. The complaints however, must be amended as set forth in this order to strike each claim that the law does not support and to sufficiently allege the remaining claims. The court directs the plaintiffs to jointly file and serve their amended complaint within 30 (thirty) days of the date of this order.

I. *Wrongful Death Claims.*

█ State and general maritime law wrongful death actions are preempted by DOHSA if the death occurs beyond a marine league (three nautical miles) from the shore of any state. *See Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 2491, 91 L.Ed.2d 174 (1986); *Mobil Oil Corp. v. Higgenbotham,* 436 U.S. 618, 620, 98 S.Ct. 2010, 2012, 56 L.Ed.2d 581 (1978). For this reason, plaintiffs cannot state a claim for relief for wrongful death other than in accordance with DOHSA. DOHSA, by its terms, requires that a wrongful death action be brought solely by the personal representative of the dece-

dent's estate. 46 U.S.C.App. § 761. Plaintiffs must accordingly amend their complaint to conform with this explicit requirement.

 Additionally, the Supreme Court has strictly interpreted the remedy under DOHSA to permit only pecuniary damages. *Higgenbotham,* 436 U.S. at 623, 98 S.Ct. at 2013; *see also* 46 U.S.C. § 762. Plaintiffs argue that although Congress did not provide for punitive damages for negligent conduct resulting in death, it did not preempt imposition of punitive damages for willful or grossly negligent conduct under general maritime law. This argument, however, is in direct conflict with both principles enunciated in *Higgenbotham,* which cautioned against adding to the explicit remedies provided in DOHSA, *id.* at 625, 98 S.Ct. at 2015; and the law now adopted by this circuit. *Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1347–49 (9th Cir.1987). Accordingly, plaintiffs must strike their claims for punitive damages for wrongful death.

## II. *The Survival of Pain and Suffering Actions.*

While DOHSA preemption of wrongful death actions is complete, other questions remain: whether an action for pre-death pain and suffering is preempted; if not, whether the action survives; and whether it is an action under state law or general maritime law.

It is clear that the Supreme Court did not intend to reach the preemption issue in *Offshore Logistics.* In footnote 1 the court stated:

> DOHSA does not include a survival provision authorizing recovery for pain and suffering before death. We do not address the issue whether the DOHSA recovery for the beneficiaries' pecuniary loss may be "supplemented" by a recovery for the decedent's pain and suffering before death under the survival provision of some conceivably applicable state statute that is intended to apply on the high seas.

106 S.Ct. at 2491 n. 1 (citations omitted).

Two recent Ninth Circuit cases shed some light on all three questions, but answer them only in part. Some background, however, is necessary to an understanding of these cases. DOHSA covers only wrongful death actions. It does not speak to pre-death pain and suffering resulting from the same accident that ultimately causes death, and it has been held that pain and suffering are not elements of damages in a DOHSA action. *Barbe v. Drummond,* 507 F.2d 794, 797 (1st Cir.1974) (and cases cited therein). Thus, courts have spoken of a "gap" in DOHSA's coverage. *Azzopardi v. Ocean Drilling & Exploration Co.,* 742 F.2d 890, 893 (5th Cir.1984) (cited in *Evich v. Morris,* 819 F.2d 256, 258 (9th Cir., *cert. denied,* —— U.S. ——, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987)). Prior to *Moragne v. States Marine Lines,* 398 U.S. 375, 387, 90 S.Ct. 1772, 1780, 26 L.Ed.2d 339 (1970), which recognized a general maritime action for wrongful death in state territorial waters, courts relied on state survival statutes to fill the "gap." *See Azzopardi,* 742 F.2d at 893. Post-*Moragne* courts began to look to general maritime law for this purpose. *Id.*

Since the briefing and oral arguments in this case, this circuit has made two important rulings. In *Evich v. Morris ("Evich II"),* 819 F.2d 256, 258 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987), the court recognized a general maritime survival action for pain and suffering and explicitly held that state law was not the source of the action, finding state law to be preempted by general federal maritime law.

*Evich II* does not provide the entire answer, however, because it was not a DOHSA case. It involved an accident in state territorial waters. Thus, the wrongful death action was a *Moragne* action under general maritime law, and a general maritime survival action was also found to exist. *See Evich v. Connelly ("Evich I"),* 759 F.2d 1432, 1434 (9th Cir.1985) (a pre-remand decision in the same case). In holding that a survival action was not barred by *Moragne, Evich I* relied upon the Fifth Circuit's decision in *Azzopardi,* which allowed a survival action in a DOHSA case

and explicitly stated its agreement. Although as to the DOHSA aspect of the case this is dictum, it is persuasive when taken together with *Evich II* and the court's other recent decision in *Bergen v. F/V St. Patrick*, 816 F.2d 1345 (9th Cir.1987).

■ *Bergen* was a DOHSA case. It did not entertain the question of whether a maritime survival action would also lie. It did, however, permit the filling of the "gap" with a Jones Act claim. The decedents were seamen and the court recognized that "many DOHSA plaintiffs qualify for Jones Act remedies for pre-death pain and suffering." 816 F.2d at 1349. Hence, the court allowed a DOHSA wrongful death action and a Jones Act claim on behalf of the decedent to stand side-by-side. Here, the gap cannot be filled by the Jones Act because decedents do not come within its provisions. However, taken together, *Evich I, Evich II* and *Bergen* speak for recognition of a general maritime survival action for pain and suffering in non-Jones Act cases. Furthermore, the Supreme Court's most recent decision, *Offshore Logistics*, does not foreclose this remedy. The Fifth Circuit has recently affirmed this interpretation of *Offshore Logistics* in *Graham v. Milky Way Barge, Inc.*, 811 F.2d 881, 891–92, superceded on rehearing, 824 F.2d 376 (5th Cir.1987).

The next question is what type of damages may be recovered. Specifically, in this case, will an action for punitive damages lie? Neither *Bergen* or *Evich* supply the answer, but they suggest it. *Bergen* unequivocally held that "where an action under DOHSA is joined with a Jones Act action, neither statutory scheme may be supplemented by the general maritime law or by state law." 816 F.2d at 1349. However, DOHSA preempted all wrongful death actions and the Jones Act, which provided decedent's pain and suffering remedy, did not allow for punitive damages. Taken together, the two acts leave no room for damages, such as punitive damages, not covered under their scheme. *Bergen* did not fill the "gap" where general maritime law, instead of the Jones Act, applies. In addition, *Bergen* reiterated the Ninth Circuit's earlier holding that in maritime actions where there is no Jones Act claim, punitive damages are available. *Id.* at 1347 n. 1. One month later in *Evich II* the court categorically held that punitive damages are available for general maritime claims. *See* 819 F.2d 256.

■ According to this analysis this court holds that DOHSA does not preempt general maritime survival actions and, where there is no Jones Act claim the decedent's estate may maintain an action for pain and suffering and, upon the proper showing, obtain punitive damages. *See Evich II*, 819 F.2d at 258–59.

### III. *Fraud Cause of Action.*

Making rather broad allegations of destruction of evidence and fraud in connection with the Coast Guard investigation, plaintiffs bring a state fraud cause of action. In their papers responding to the motions before the court, plaintiffs explain further that their claim also is a state tort claim for spoliation of evidence, citing *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (2d Dist.1984).

■ Plaintiffs also argue that they have standing to recover on a claim against defendants based on alleged fraud committed during the Coast Guard investigation of the sinking of the Jack Jr. They claim standing because the public has the right to information and evidence uncovered in the Coast Guard investigation under 46 U.S.C. § 6302. Plaintiffs do not, and they cannot, support this argument with any cases. Indeed, such an argument could lead to rather absurd results and expose parties under investigation to multiple liability. Plaintiffs must strike this claim from the amended complaint.

■ The claim of spoliation of evidence similarly must fail. Though plaintiffs only vaguely suggested such a claim in their complaint, the court finds that they could not allege facts sufficient to support the claim. The spoliation of evidence tort was only recently created by a California court. *Smith*, 151 Cal.App.3d at 496, 198 Cal.Rptr. 829. In recognizing such a claim, the court

required the existence of a clear duty to preserve the evidence running from the defendant to the plaintiff. *Id.* at 496–97, 198 Cal.Rptr. 829, *citing Williams v. State,* 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137 (1983). In *Smith,* the defendant had a duty to maintain the evidence because plaintiffs' counsel made an agreement with a car dealer in which the dealer agreed to maintain the evidence. The case at bar is easily distinguished as the court finds no authority for the proposition that such a duty arises under the facts alleged herein.

Accordingly, the motion to strike is granted as to the fraud and spoliation of evidence claim.

## IV. *Jury Trial.*

■ Ordinarily, there is no right to a jury trial in an action under the court's maritime jurisdiction. *See Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963). DOHSA actions, according to the terms of the statute, lie in admiralty. 46 U.S.C.App. § 761. Therefore, plaintiffs are not entitled to a jury under DOHSA. The only other claims remaining are under general maritime law, because the claims under state law are dismissed.

However, some plaintiffs in these consolidated actions have couched their claims both as maritime claims under Rule 9(h) of the Federal Rules of Civil Procedure and as diversity claims, alleging California citizenship for plaintiffs and non-California citizenship for defendants. They have also demanded a jury trial.

■ Even though claims may sound in admiralty, where diversity jurisdiction can be established there is a right to trial by jury. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 360, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962). Where there is true diversity the parties are entitled to a jury. This may complicate trial of these actions because some complaints may rest solely on admiralty jurisdiction and neither allege nor have any basis for diversity jurisdiction. Those cases will be tried together with the diversity cases and the jury will act only in an advisory capacity for the actions brought solely in admiralty. This will assure a fair trial for all parties without the risk of inconsistent verdicts.

## V. *Property Damage Claims.*

Plaintiffs make a claim for property damage for the loss of the fishing vessel and of personal belongings of the decedents that were lost at sea. They also claim punitive damages for such loss.

As held above, punitive damages are available under general maritime law upon a proper showing and those claims will not be dismissed at this time.

## VI. *Motion to Stay.*

Defendants urge that the court stay the proceedings until the first of the following: the "pertinent criminal statutes of limitations" expire; the defendants' trials for "all pertinent crimes" are final; or plaintiffs reveal evidence they have that could implicate the defendants in criminal acts in connection with the Jack Jr.'s demise. Defendants argue that a stay is necessary to allow them to protect their constitutional right against self incrimination. Additionally, if a stay is not granted, they claim they will unfairly have to limit their defense in this action to maintain their fifth amendment rights.

■ The power to stay proceedings is inherent in every court. *See Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936). There the Court wrote that "the suppliant for a stay must make out a clear case of hardhip or inequity in being required to go forward, if there is ever a fair possibility that the stay for which he prays will work a damage to someone else." *Id.* at 255, 57 S.Ct. at 166.

■ The court has discretion in deciding whether to grant a motion to stay. The constitution does not require a civil action to be stayed until criminal proceedings are no longer possible. *See Arthurs v. Stern,* 560 F.2d 477, 479–80 (1st Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). *See also Gordon v.*

*Federal Deposit Insurance Corp.*, 427 F.2d 578, 580 (D.C.Cir.1970) (holding that the overall interest of the courts that justice be done does not allow halting all civil litigation pending the outcome of a related criminal prosecution). Courts have held that the defendant must make the choice whether to plead the fifth amendment, rather than forcing a delay in plaintiffs' recovery. *See, e.g., De Vita v. Sills*, 422 F.2d 1172, 1178 (3rd Cir.1970).

 The court makes a determination regarding a stay based on the facts of each case and balances the unfairness to each party. Two factors are particularly significant in this case. First, the court notes that no indictments have yet been filed. *Cf. Fidelity Bankers Life Ins. Co. v. Wedco, Inc.*, 586 F.Supp. 1123, 1125 (D.Nev. 1984). Second, while defendants fail to cite which statute of limitations may apply, the court finds a five-year statute of limitations could be relevant. *See* 18 U.S.C. § 3182. This means plaintiffs would have to delay their action until the year 1991. This delay is excessive in view of the inherent delay of litigation itself.

The court's determination is further supported by the existence of less drastic means by which the defendants may protect their fifth amendment rights. For example, protective orders can be made as necessary to control discovery. *See Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir.1979); *Driver v. Helms*, 402 F.Supp. 683, 686 (D.R.I.1975).

While the court recognizes that some inherent conflicts exist for a party defending a civil suit who is concerned with the possibility of related criminal prosecution, those conflicts do not support a stay at this time. In the event indictments are filed or circumstances otherwise significantly change, the defendants may again renew their request for a stay. At this time, however, the court denies the motion to stay. The court orders, instead, that the parties meet within 20 (twenty) days of this order to confer and agree on a discovery plan that will be least likely to intrude on defendants' fifth amendment rights. The parties are assigned to Magistrate Wolflen to rec-

oncile differences in preparing a discovery schedule.

IT IS SO ORDERED.