In re **AIR DISASTER IN LOCKERBIE, SCOTLAND ON DECEMBER 21, 1988.**

**MDL No. 799.**

United States District Court,
E.D. New York.

Feb. 26, 1990.

### MEMORANDUM AND ORDER

PLATT, Chief Judge.

Plaintiffs move for reargument of this Court's Memorandum and Order that punitive damages are barred by the Warsaw Convention, or, if that is denied, for an Order pursuant to 28 U.S.C. § 1292(b) to

amend the Court's Memorandum and Order to include a certification for an immediate appeal.

Plaintiffs assert that reargument is warranted because this Court failed to follow the "recent holding of *Chan v. Korean Air Lines,* —— U.S. ——, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989), that the plain meaning of the convention's language must be followed, unless there is an ambiguity." Plaintiffs concede that if there is an ambiguity, then the Court may look to the drafting history or other evidence of the shared expectations of the parties.

Plaintiffs further argue that this Court has misconstrued the primary shared expectation of the contracting parties; according to plaintiffs, the parties only intended to set some uniform limit on an airline carrier's liability if the damage was not caused by wilful misconduct and if the damage was caused by wilful misconduct then there was to be no uniform limit.

Finally, plaintiffs argue that this Court's reliance on *Floyd v. Eastern Airlines,* 872 F.2d 1462 (11th Cir.1989) is unwarranted because *Floyd,* which was decided prior to *Chan* utilized an analytical reasoning rejected by *Chan.*

■ This Court's disagreement with plaintiffs appears to be not in the interpretation of *Chan* but in its applicability to the case at bar. This Court agrees with plaintiffs that the Supreme Court in *Chan* held that "the plain meaning of the convention's language must be followed" and "where the text [of the Warsaw Convention] is clear, ... the courts have no power to insert an amendment." *Chan v. Korean Air Lines,* —— U.S. ——, 109 S.Ct. 1676 (1989) However, nowhere does the Convention text clearly provide a cause of action for punitive damages and that is what

plaintiffs' argument requires. Unlike the plaintiffs in *Floyd* who asserted their punitive damage claims under State law and then simply asked that the Warsaw Convention not preclude their claims, plaintiffs here have argued that the Warsaw Convention actually authorizes punitive damage claims.[1] Therefore, it seems to this Court that if the text is, as plaintiffs maintain, without ambiguity, and the plain meaning must be followed without reference to the shared expectation of the parties, then the only possible reading is that the Convention does not create a cause of action for punitive damages and plaintiffs claims must be dismissed unless they assert State causes of action and establish a basis for diversity or ancillary jurisdiction. This conclusion is supported by the Second Circuit's hesitancy to hold that the text of the Warsaw Convention even provides a cause of action for compensatory damages. For many years the Second Circuit held that Article 17 did not create a cause of action for damages. *See Komlos v. Compagnie Nationale Air France,* 209 F.2d 436 (2d Cir.1953); *Noel v. Linea Aeropostal Venezolana,* 247 F.2d 677 (2nd Cir.1957).[2] When the Second Circuit, in *Benjamins v. British European Airways,* 572 F.2d 913 (2d Cir.1978), reversed these earlier rulings and recognized that Article 17 did provide a cause of action, it relied on the intent of the treaty signatories. *Benjamins v. British European Airways,* 572 F.2d 913 (2d Cir. 1978) (the Court relied on the minutes and documents of meetings in 1925 and 1929, other Articles of the Convention, and the ways other signatories interpreted the Convention's provisions in order to decipher what concerned the delegates). It seems that even the language of Article 17 is somewhat ambiguous and the ambiguity

---

1. While a number of plaintiffs have asserted pendent or ancillary jurisdiction in their complaints and have referred to the possibility of pendent party jurisdiction with respect to defendants Alert Management Systems, Inc. and Pan Am World Services, they have not explicitly asserted that their punitive damage claims were based on State causes of action and while this Court noted that in light of *Floyd,* such claims would probably be precluded, the Memorandum and Order, dated January 3, 1990, 733

F.Supp. 547 (E.D.N.Y.), expressly did not address this issue. See footnote 7 at 552.

2. Other courts maintained that if Article 17 did not create a cause of action "it is difficult to understand just what Article 17 did create." *Salamon v. Koninklijke Luchtvaart Maatschappij, N.V.,* 107 N.Y.S.2d 768, 773 (Sup.Ct.1951), *aff'd mem.* 281 App.Div. 965, 120 N.Y.S.2d 917 (1st Dept.1953).

may only be resolved by resorting to the intent of the parties as evidenced by materials outside the Convention's text.

Similarly, this Court ultimately found that no provision of the treaty clearly created a cause of action for punitive damage claims and hence, turned to the shared expectations of the parties for guidance. However, prior to finding the treaty to be ambiguous in this respect, we examined the language of the text.

In this Court's prior Memorandum and Order, this Court analyzed the "natural meaning" of those passages that plaintiffs asserted authorized punitive damage claims whether or not wilful misconduct existed. While plaintiffs argued that this Court should read the "however founded" language of Article 24, ¶ 1 in combination with the "without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights" of Article 24, ¶ 2 without reference to the other language in those paragraphs, this Court found that the natural meaning of that language could only be determined by examining it in the context of the entire paragraphs and that as a result the natural meaning of the paragraphs indicated punitive damages were certainly not authorized in cases where no wilful misconduct existed as plaintiffs have asserted. Memorandum and Order, 8–9.

Similarly, this Court examined the natural meaning of the language found in Article 25: "the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability if the damage is caused by wilful misconduct" and found it to be ambiguous. "Taken alone, the language of Article 25 may be interpreted to mean that one engaged in wilful misconduct would not benefit from either the specific monetary limit set by the Warsaw Convention or the general plan to limit liability to compensatory languages." Memorandum and Order, 10. Further, this Court indicated that even without any reference to the intent of the parties, the natural meaning of the language was more consistent with the former of the two possibilities; otherwise "Article 25 would have provided that the entire Warsaw Convention, rather than just certain provisions, was inapplicable in cases [of wilful misconduct]." Memorandum and Order, p. 10.

Having determined that neither Article 24 nor 25 provided a cause of action for punitive damages, this Court then determined that the natural meaning of Article 17 also did not allow for punitive damage claims since punitive damage claims were not "damage sustained" and moreover, if Article 17 was meant to provide a cause of action for punitive damage claims the same would have been worded as actions for damages rather than damage sustained.[3]

In conclusion, it seems to this Court that we have not failed to consider the *Chan* holding but rather simply disagree with its applicability to the case at bar since we found that the treaty does not clearly provide any cause of action for punitive damage actions. Therefore, plaintiff's first ground for reargument fails.

As for plaintiffs argument that this Court has misconstrued the primary intent of the parties, it is possible that plaintiffs construction of the parties intent is correct and we are wrong but we do not think so. This also appears to be an issue for appeal rather than reargument.

With respect to plaintiffs' argument that we improperly relied on *Floyd* which did not apply *Chan*, we feel as discussed above that we did apply *Chan* and that while we relied on aspects of the *Floyd* decision for guidance on the parties' intent, this seems quite appropriate since *Floyd* is the only Circuit decision which has addressed issues involving punitive damages and the Warsaw Convention.

Finally, in light of the intensity of some of the comments on our original Memorandum and Order, we feel constrained to

---

**3.** It should be noted that while this Court relied on the *Floyd* decision and the authorities cited therein for the proposition that punitive damages are not damage sustained, this Court alternatively relied on its own finding that if Article 17 intended to provide a cause of action for punitive damages it would have read actions for damages.

make the following comment on our Memorandum and Order dated January 3, 1990.

■ As we indicated in our footnote 14, it may well be that this dollar limitation of $75,000.00 has been rendered anachronistic by inflation and might well be more realistic if revised to an amount between $250,000.00 to $300,000.00 but that like the whole question of punitive damages is more appropriately the subject of an amendment to the treaties not pleas to our courts or those of other countries as plaintiffs' attorneys seek to do here. Common sense tells us that this must be so in cases of international agreements such as those with which we are concerned in this case.

In conclusion, while we deny plaintiffs' motion for reargument, we grant their motion for an order certifying an interlocutory appeal of this Court's Memorandum and Order, dated January 3, 1990.

SO ORDERED.