**In re AIR DISASTER NEAR HONOLULU, HAWAII ON FEBRUARY 24, 1989.**

**No. MDL 807.**

United States District Court, N.D. California.

Aug. 13, 1990.

Juanita Madole, Speiser, Krause, Madole & Cook, Irvine, Cal., L. Richard Fried, Jr., Cronin, Fried, Sekiya, Kekina & Fairbanks, Honolulu, Hawaii, Bruce A. Lampert, Schaden, Swanson & Lampert, Denver, Colo., Andrew P. Lamis, Lieff, Cabraser & Heimann, Richard Brown, Belli, Belli, Brown, Manzione Fabbro & Zakaria, San Francisco, Cal., Gary M. Mogil, Wasserman, Comden & Casselman, Tarzana, Cal., James R. Collins, O'Reilly & Collins, Menlo Park, Cal., John S. Carroll, Carroll, Smith & Buchli, Honolulu, Hawaii, Michael R. Devitt, Beus, Gilbert & Morrill, Phoenix, Ariz., Edward I. Stillman, Miller, Stillman & Bartel, Cleveland, Ohio, Walter H. Walker, III, Law Offices of Walter Walker, San Francisco, Cal., Howard E. Shafran, F. Lee Bailey & Aaron J. Broder, New York City, James J. McCarthy, Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal., Ned Good, Pasadena, Cal., for plaintiffs.

Keith Gerrard, John D. Dillow, Scott F. Seablom, Perkins Coie, Seattle, Wash., for Boeing Co.

Gregory C. Read, David E. Mauldin, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for United Airlines, Inc.

## ORDER

VAUGHN R. WALKER, District Judge.

These actions arise out of a mid-air accident on February 24, 1989, involving United Airlines Flight 811. The flight originated at San Francisco International Airport on February 23, 1989, and made a short stop in Los Angeles, where passengers were transferred to a Boeing 747–122 aircraft (N4713U). The aircraft refueled in Honolulu and left Honolulu International Airport at approximately 1:34 a.m., February 24, for Sydney, Australia with a planned stop in Auckland, New Zealand.

The plane carried 337 passengers and 18 crew-members.

At approximately 2:09 a.m., the aircraft was flying at an altitude of approximately 22,000 feet, over international waters approximately 85 nautical miles south of Honolulu, when the forward cargo door and a portion of the fuselage separated from the aircraft, resulting in rapid cabin decompression. Nine passengers were sucked out of the hole in the fuselage and were killed. The plane returned to Honolulu and landed approximately 30 minutes after the accident.

On August 14, 1989, the Judicial Panel on Multidistrict Litigation transferred all actions arising out of the Flight 811 accident to the Northern District of California. There are currently approximately 76 such cases pending before this court.[1] United Air Lines and the Boeing Company have been named as defendants in all actions, except those brought by crew-members which name only Boeing.

In a January 5, 1990 pretrial order, Judge William W. Schwarzer (who presided over these cases before their transfer to the undersigned) ordered the parties to submit joint memoranda addressing the issues of choice of law and the availability of punitive damages. The parties have done so, and on July 11, 1990, the court heard oral argument on those issues. This order resolves some of the issues presented by the parties.

## I. APPLICABILITY OF GENERAL MARITIME LAW.

■ Defendants contend that the torts alleged in these actions are maritime torts and that the applicable law is therefore general maritime law. Plaintiffs, while conceding that "traditional legal concepts would apply maritime law to aircraft-related injuries and deaths on the High Seas" (Opp.Mem. at 7), seek the application of state law. Plaintiffs attempt to distinguish those cases applying maritime law to airplane crashes into the high seas by pointing to the fact that here the plane returned to Honolulu where it landed.

A maritime tort "requires a showing that: (1) the alleged wrong occurred on *or over* navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States,* 711 F.2d 893, 896 (9th Cir.1983), citing *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972) (emphasis added). *See also Owens–Illinois, Inc. v. United States District Court,* 698 F.2d 967, 969 (9th Cir.1983) ("a suit in tort is cognizable in admiralty only if the tort occurred on or over navigable waters"). Requirement (1) is clearly met here. It is not disputed that the cargo door blew off the United jet when it was approximately 85 miles offshore of Hawaii, bound for New Zealand.[2] Requirement (2) is also met. The Supreme Court has held that the transoceanic transportation of passengers by air is "a function traditionally performed by waterborne vessels" and satisfies the "significant relationship" criteria. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 218–19, 106 S.Ct. 2485, 2492, 91 L.Ed.2d 174 (1986).

Plaintiffs have not come forward with any persuasive argument why this traditional analysis should not apply here. While plaintiffs are perhaps correct that there is an element of fortuity in the fact that the cargo door blew off over sea rather than over land, that element of fortuity is also present where a mechanical failure occurring in the air causes a plane on a transoceanic flight to crash into the ocean. The plaintiffs do not dispute that the latter

---

1. The claims of roughly 180 passengers and 15 crew-members are included in those actions.

2. That the alleged negligence or other misconduct causing the cargo door to fail occurred on land is immaterial. *Williams,* 711 F.2d at 896 (relevant inquiry is where the alleged negligence "took effect"); *Pan–Alaska v. Marine Const. & Design Co.,* 565 F.2d 1129 (9th Cir.1977) (maritime tort where ship fire at sea caused by improper design and installation of engine equipment on land); *see also Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1348 (9th Cir.1987) ("wrongful act" "occurs" for purposes of Death on the High Seas Act at the site of an accident, not where the wrongful act causing the death originates.)

situation would constitute a maritime tort, even though the same mechanical failure if it occurred while the plane was over land, would not. Plaintiffs in essence appear to be arguing that the traditional application of maritime law to air accidents occurring over sea and involving transoceanic flights is analytically misplaced. While that may be the case, plaintiffs have offered no compelling rationale for this court to ignore settled precedent, and the court concludes that the torts alleged in these actions are maritime in nature.

■ Because the alleged torts are maritime torts, admiralty jurisdiction exists, and general (i.e. federal) maritime law applies as the substantive law in these actions. General maritime law preempts state law, and must be applied even where, as here, plaintiffs choose not to invoke admiralty jurisdiction and rely instead on diversity jurisdiction and federal question jurisdiction.[3]

Because general maritime law supplies the substantive law in these actions,[4] it is not necessary to resolve the potentially complex choice of law questions involving the competing interests of several states and foreign nations that would otherwise arise.[5]

## II. APPLICABILITY OF THE DEATH ON THE HIGH SEAS ACT.

■ The Death on the High Seas Act, 46 App.U.S.C. § 761, et seq. ("DOHSA") provides in part:

Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league [three nautical miles] from the shore of any State, ... the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

46 App.U.S.C. § 761.

Plaintiffs acknowledge that DOHSA has been applied uniformly where airliners have crashed into the high seas, but seek to distinguish the situation here in which the airplane was able to return to land following the accident. Several cases have held that DOHSA applies even when an airplane does not crash into the ocean. *See D'Aleman v. Pan Am*, 259 F.2d 493 (2d Cir. 1958); *Kropp v. Douglas Aircraft Co.*, 329 F.Supp. 447, 455 (E.D.N.Y.1971); *Noel v. Linea Aeropostal Venezolana*, 154 F.Supp. 162 (S.D.N.Y.), *aff'd on other grounds*, 247 F.2d 677 (2d Cir.1957). *See also Notarian v. Trans World Airlines, Inc.*, 244 F.Supp. 874 (W.D.Pa.1965) (injury action; admiralty jurisdiction upheld). Plaintiffs have not cited any reported case to the contrary. It would be inconsistent to hold that the "wrongful act, neglect or default" at issue here did not "occu[r] on the high seas" for purposes of DOHSA, but that it did satisfy the *Executive Jet/ Williams* "maritime locality" requirement. Plaintiffs have come forward with no compelling reason why the cases applying

---

3. "Once admiralty jurisdiction is established, the substantive rules of maritime law apply, regardless whether the plaintiff chooses to pursue its claim in federal or state court." *Genetics International v. Cormorant Bulk Carriers, Inc.*, 877 F.2d 806, 808 (9th Cir.1989). "[T]he source of subject matter jurisdiction is not always dispositive of the substantive law that governs the case. The mere fact that the plaintiffs invoked the diversity of citizenship jurisdiction of the district court does not preclude the application of maritime law.... Rule 9(h) does not authorize a plaintiff to choose the substantive law that applies to his claim." *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir.1988). *See also Evich v. Morris*, 819 F.2d 256, 257–58 (9th Cir. 1987).

4. Defendants concede that punitive damages are available under general maritime law, *Protectus Alpha Navigation, Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985), unless they are somehow preempted (e.g. by the Warsaw Convention or the Death on the High Seas Act).

5. *See Executive Jet*, 409 U.S. at 271–72, 93 S.Ct. at 506, suggesting that maritime law might apply to an international transoceanic flight, in part because of "choice-of-forum problems, choice-of-law problems, international law problems, multi-national conventions and treaties, and so on." (Footnote omitted).

DOHSA in cases of aviation crashes into the ocean should not apply here. The complaints of those plaintiffs asserting claims on behalf of deceased passengers must therefore be amended to include a DOHSA claim.

## III. DOHSA'S PRECLUSION OF NON-PECUNIARY DAMAGES.

■ DOHSA creates a cause of action for wrongful death and provides that pecuniary damages [6] are available to surviving dependents [7]. The Supreme Court has held that DOHSA precludes the award of non-pecuniary damages for wrongful death, either under general maritime law, *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 624–25, 98 S.Ct. 2010, 2014–15, 56 L.Ed.2d 581 (1978), or under state law, *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232, 106 S.Ct. 2485, 2499, 91 L.Ed.2d 174 (1986). The Court, however, has expressly reserved decision on whether a *survival* action brought by the decedent's estate and seeking non-pecuniary damages could be permitted where DOHSA applies. *Id.* at 215 n. 1, 106 S.Ct. at 2490 n. 1. Plaintiffs here seek to assert survival actions in an attempt to recover awards for the pre-death pain and suffering of their decedents, and perhaps punitive damages.

In *Evich v. Connelly*, 759 F.2d 1432, 1434 (9th Cir.1985) ("Evich I") the Ninth Circuit stated:

"The Fifth Circuit has allowed survival actions to supplement DOHSA actions. *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 893–94 (5th Cir. 1984). We agree, and conclude there is no bar to maritime survival actions based on *Moragne* [*v. States Marine Lines*, 398 U.S. 375 [90 S.Ct. 1772, 26 L.Ed.2d 339] (1970) (general maritime wrongful death action created for accidents in territorial waters) ]."

*Evich*, however, did not involve a claim under DOHSA (the accident occurred within the 3 mile territorial limit) and the adop-

tion of *Azzopardi* is therefore dicta. Further, the actual holding ("there is no bar to maritime survival actions based on *Moragne*") can be relied upon only for the proposition that there is no such bar to survival actions addressing deaths within the 3 mile limit—the situation addressed in *Moragne.*

This issue is governed, therefore, by the later-decided case of *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1348 (9th Cir.1987). *Bergen* disallowed a claim for punitive damages under general maritime law where both DOHSA and the Jones Act applied. *Bergen* states: "Where DOHSA applies, its pecuniary remedies cannot be supplemented by non-pecuniary damages available under the general maritime law. [citing *Higginbotham* ] Nor can DOHSA be supplemented by non-pecuniary damages available under state law. [citing *Offshore Logistics* ]" *Id.* *Bergen* goes on to quote from *Higginbotham*, 436 U.S. at 625, 98 S.Ct. at 2015:

"The Death on the High Seas Act ... announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages.... The Act does not address every issue of wrongful-death law, ... but when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless...." "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of non-pecuniary supplements."

*Bergen*, 816 F.2d at 1348–49. *Bergen* concludes that "*Higginbotham* and *Offshore Logistics* make it clear that Congress intended DOHSA to preempt anything but pecuniary damages where DOHSA applies." *Id.* at 1349.

*Bergen*'s language is sweeping and comprehensive. This court therefore cannot agree with the conclusion of the court in

---

**6.** "The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought...." 46 App.U.S.C. § 762.

**7.** Suit may be brought under DOHSA "for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative." 46 U.S.C.App. § 761.

*Favaloro v. S/S Golden Gate*, 687 F.Supp. 475, 479–80 (N.D.Cal.1987). *Favaloro* distinguished *Bergen* and allowed pain and suffering damages to be claimed under a general maritime survival action, despite the applicability of DOHSA. *Favaloro* reasoned that *Bergen* addressed a situation in which both DOHSA (providing a wrongful death action) and the Jones Act (providing a survival action) *together* completely occupied the field, and was therefore not controlling in a situation where only DOHSA applied, and no Congressionally created survival action existed. It is true that *Bergen* states "[w]e hold that *where an action under DOHSA is joined with a Jones Act action,* neither statutory scheme may be supplemented by the general maritime law or by state law." *Bergen,* 816 F.2d at 1349 (emphasis added). However, the broad language quoted above makes *Favaloro*'s attempt to distinguish *Bergen* unpersuasive. Further, the reasoning of *Bergen*—that many DOHSA plaintiffs are also eligible for Jones Act pain and suffering benefits, and that to allow all such plaintiffs to supplement their claims under general maritime law would "nullif[y]" DOHSA's preemption of maritime law, *id.*—is equally applicable here. The estate of *every* person killed on the high seas could file a survival claim under general maritime law and thereby "nullif[y]" DOHSA's preemption of maritime law. This court is governed by *Bergen,* and concludes that nonpecuniary damages under a general maritime survival action are impermissible because they are preempted by DOHSA.[8]

The parties have not addressed, and the court does not now resolve the issue of whether DOHSA precludes any non-pecuniary damages that might be available under the Warsaw Convention.[9]

## IV. AVAILABILITY OF TRIAL BY JURY.

As discussed above, the torts alleged in these actions are maritime torts, the substantive law that will be applied is general maritime law, and this court has admiralty jurisdiction. Traditionally, suits in admiralty are tried to the court. Where, however, there is an alternative basis of subject matter jurisdiction (e.g., diversity or federal question jurisdiction), there is authority that a plaintiff may choose to forgo the *procedures* associated with admiralty jurisdiction and instead maintain the action under the procedures of the "law side" of the court—and demand a jury trial as guaranteed in civil actions by the Seventh Amendment. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines,* 369 U.S. 355, 359–60, 82 S.Ct. 780, 783–84, 7 L.Ed.2d 798 (1962) (plaintiff with *in personam* maritime cause of action may rely on diversity jurisdiction and demand jury trial); *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.,* 813 F.2d 1553, 1559 (9th Cir.1987) (where plaintiff has independent basis of jurisdiction for his maritime claims, the claims are not "cognizable only in admiralty" and plaintiff's "election to invoke jurisdiction on the 'law side' of the court (as opposed to the 'admiralty side,') therefore, precludes [the court from] treating his maritime

---

**8.** As further grounds for this conclusion, defendants point out that DOHSA contains a survival section, 46 App.U.S.C. § 765, which provides that where an injured person dies during the pendency of a personal injury action in admiralty, "the personal representative may be substituted as a party and the suit may proceed as a suit under this chapter for the *recovery of the compensation provided in section 762* of this title [i.e., pecuniary compensation]." (emphasis added) Defendants also point out that DOHSA was enacted in the same year as the Jones Act, 46 App.U.S.C. § 688, which incorporated an explicit survival provision. *See* 45 U.S.C. § 59.

**9.** The court notes, however, that it is possible that the Warsaw Convention creates a cause of action for survival. *See In re Mexico City Air-*

*crash,* 708 F.2d 400, 415 (9th Cir.1983) (Warsaw Convention creates cause of action for wrongful death). If that is the case, then *Bergen* suggests that a decedent's estate could recover non-pecuniary damages for the Warsaw Convention survival claim (assuming such damages are available under the Convention), together with decedent's dependent's recovery for pecuniary damages under DOHSA. *Bergen* approved an award of pain and suffering damages under a statutorily based (Jones Act) survival action, even though DOHSA also applied. To the extent a claim under the Warsaw Convention is considered "statutorily" based, *Bergen* would thus suggest that non-pecuniary damages under a Warsaw Convention claim are available.

claims as admiralty claims...." (citations omitted). "A plaintiff with a claim cognizable in the district court's admiralty jurisdiction and also cognizable in another basis of jurisdiction may invoke whichever jurisdiction he desires." *Bodden v. Osgood,* 879 F.2d 184, 186 (5th Cir.1989) (where diversity is basis of jurisdiction, admiralty procedures do not apply, despite maritime nature of action.) *See also Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1065–66 (5th Cir.1981).

Here, each of the transferred actions was filed in or removed to federal court on the basis of diversity and/or federal question jurisdiction. None of the complaints invokes admiralty jurisdiction nor makes an election under Fed.R.Civ.P. 9(h) to apply admiralty procedures. In light of the historical test under the Seventh Amendment, which looks to the objective nature of the relief being sought, *Dimick v. Schiedt,* 293 U.S. 474, 476, 55 S.Ct. 296, 296, 79 L.Ed. 603 (1935), *Standard Oil Co. of Cal. v. Arizona,* 738 F.2d 1021, 1026 (9th Cir. 1984), it is anomalous to permit plaintiffs to invoke a jury trial right by the mere characterization whether they are proceeding in equity or at law. Plaintiffs' assertion that they are proceeding on the "law side" of

federal court and foregoing the *procedures* of the "admiralty side" does not, of course, affect the court's decision that general maritime law provides the *substantive* law in these actions and should not affect procedural entitlements.[10]

These cases are at an early stage and it would be premature to make a definitive determination on plaintiffs' right to a jury trial. Accordingly, the court reserves the issue until such time as a trial appears imminent and the parties are able adequately to brief the issue.

▮▮▮ As discussed above, however, the representatives of the deceased plaintiffs must bring their claims under DOHSA, which provides for a suit "in admiralty," 46 App.U.S.C. § 761. To the extent that any other causes of action that DOHSA plaintiffs might have asserted are effectively preempted by DOHSA, there is no basis for DOHSA plaintiffs to demand a jury.[11] *Tallentire v. Offshore Logistics, Inc.,* 800 F.2d 1390, 1391 (5th Cir.1986); *Nash v. United Technologies,* 22 Avi. 18,139 (S.D.Fla.1990); *Friedman v. Mitsubishi Aircraft International, Inc.,* 678 F.Supp. 1064, 1065 (S.D.N.Y.1988); *contra In re Korean Air Lines Disaster of Sept. 1, 1983,* 704 F.Supp. 1135, 1151–58 (D.D.C.1988).[12]

---

**10.** [T]he same substantive law governs the case whether it is brought under the admiralty jurisdiction of the federal courts or instead ... under either the common law jurisdiction of the states or the diversity jurisdiction of the federal courts.... The choice between the two different routes through which a maritime claim may reach the federal courts (admiralty and diversity) is therefore determinative only of whether the suit is 'at admiralty' or 'at law'; the choice affects various procedural matters (most importantly the right to trial by jury) but does not affect the substantive rights of the parties.

*Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1068 (5th Cir.1981).

**11.** One could argue that although DOHSA precludes an award of non-pecuniary damages, it does not prohibit the mere bringing of a general maritime survival action, and that such an action could be the basis for a jury demand. *See Fitzgerald v. United States Lines,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); *Peace v. Fidalgo Island Packing Co.,* 419 F.2d 371 (9th Cir.1969) (where a DOHSA claim and a Jones Act claim are joined in the same cause of action, plaintiff is entitled to jury trial on both claims; DOHSA does not forbid a jury trial). That argu-

ment must be rejected. If a general maritime survival action were to be asserted, it would form no basis for any relief other than that already available under DOHSA. Such an action thus would be an empty formalism and should not be permitted to circumvent DOHSA's explicit mandate that a DOHSA action be heard in admiralty. Plaintiffs' assertion of a claim under general maritime law therefore cannot provide a basis for a jury trial here.

As noted above, however, the court reserves judgment on whether the Warsaw Convention might provide a basis for awarding non-pecuniary damages which would not be preempted by DOHSA. If the Warsaw Convention does provide a meaningful basis for relief not available under DOHSA, the DOHSA plaintiffs would be able to demand a jury trial for their Warsaw claims and thereby be entitled to a jury trial for their DOHSA claims as well. *Peace v. Fidalgo Island Packing,* 419 F.2d 371 (9th Cir.1969).

**12.** The court reserves judgment on what procedures would be used in the event that there is one consolidated liability trial in this action, resolving the claims of both DOHSA and non-DOHSA plaintiffs. Where a single plaintiff as-

## V. THE WARSAW CONVENTION'S PRECLUSION OF RECOVERY FOR PUNITIVE DAMAGES.

■ The Warsaw Convention,[13] as amended by the Montreal Agreement,[14] applies to international air flights which stop in or leave from the United States. It provides for strict liability against the air carrier, with a liability cap of $75,000 which is waived where plaintiffs can show "wilful misconduct." The Convention preempts local law which conflicts with the scheme of the Convention. *See In re Aircrash in Bali, Indonesia on April 22, 1974*, 684 F.2d 1301, 1307 (9th Cir.1982); Warsaw Convention Article 24.

■ In interpreting the Warsaw Convention, a court must be governed by the text of the Convention where it is clear, and has "no power to insert an amendment." *Chan v. Korean Air Lines*, 490 U.S. 122, 109 S.Ct. 1676, 1684–85, 104 L.Ed.2d 113 (1989). The "intricate drafting history" of the Convention may only be relied upon where the text is ambiguous, and even then the text's "most natural meaning [can] properly be contradicted only by clear drafting history." *Id.* 109 S.Ct. at 1684 n. 5. The governing text of the Convention is the French language version. *Air France v. Saks*, 470 U.S. 392, 397, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985). A court interpreting the Convention must attempt "to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties. We look to the French legal meaning for guidance as to these expectations because the Warsaw Convention was drafted in French by continental jurists." *Id.* at 399, 105 S.Ct. at 1342 (citations omitted). Plaintiffs do not appear to contend that the Warsaw Convention itself gives them a cause of action for punitive damages. Rather they contend that they may claim punitive damages under general maritime law,[15] and that the Warsaw Convention does not pre-empt that claim. They contend that the Convention does not address the issue of damages, other than the $75,000 liability cap, and that within the cap, the Convention contemplated that each nation will apply its own law regarding damages. Defendants counter that the Convention contemplates a scheme of compensatory damages, and that to allow punitive damages would conflict with that provision of the Convention, as well as undermine the primary goals of the Convention—establishing uniform rules of liability in international air cases, and limiting liability.

The only circuit court decision on point is *Floyd v. Eastern Airlines*, 872 F.2d 1462, 1485–89 (11th Cir.1989), *cert. granted*, 496 U.S. 904, 110 S.Ct. 2585, 110 L.Ed.2d 266. *Floyd* held that the Warsaw Convention precludes plaintiffs from recovering punitive damages under a state law claim. *Floyd* analyzed "the text and structure of the Convention, and the concurrent and subsequent legislative history" to conclude that "Article 17 is entirely compensatory in nature."[16] *Id.* at 1486. As Article 17 pro-

serts closely related claims, a right to a jury trial on one claim will provide a right to jury trial on the related claims in admiralty. *Owens–Illinois, Inc. v. United States Dist. Court*, 698 F.2d 967, 972 (9th Cir.1983); *Peace v. Fidalgo Island Packing*, 419 F.2d 371 (9th Cir.1969). That rule, however, would not be applicable to these actions, if the DOHSA plaintiffs do not have any claim to a jury trial. One possibility would be to try the liability issue to the court and to a jury simultaneously, with the jury acting as an advisory jury with respect to the DOHSA claims. *See Favaloro v. S/S Golden Gate*, 687 F.Supp. 475, 481 (N.D.Cal.1987).

**13.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C.App. § 1502.

**14.** Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, CAB Agreement 18900, note following 49 U.S.C.App. § 1502.

**15.** The Warsaw Convention does not provide an exclusive cause of action. *In re Mexico City Aircrash*, 708 F.2d 400, 414 n. 25 (9th Cir.1983).

**16.** Floyd relied (a) on the "damage sustained" language of the unofficial English translation of Article 17, (b) on a finding that punitive damages were not available under French law and most other civil law systems, and (c) on the Convention's failure to mention punitive damages anywhere, to conclude that "the Conven-

vides the cause of action under the Convention,[17] the *Floyd* court concluded that no action for punitive damages lay under the Convention itself. It then held that allowing punitive damages under a state cause of action would be inconsistent with the Convention's compensatory scheme. *Id.* at 1487–89. It based this conclusion on the preeminent goals of the Convention—limitation of liability, and uniformity of rules of liability. Punitive damages would increase liability exposure, and would decrease uniformity because punitive damages are available in some forums but not others.

This court finds *Floyd* largely convincing, and in the absence of contrary appellate authority, persuasive.[18] There is some ambiguous Ninth Circuit authority indicating that the Convention does not address the issue of damages at all instead leaving the measure of damages up to local law.[19] That authority, however, is consistent with the conclusion that the Convention contemplates only compensatory damages, leaving the measure of those compensatory damages to local law.

Plaintiffs rely on the "respective rights" language of Article 24(2)[20] to contend that the Convention expressly reserves to local law issues regarding measure of damages. That reliance is misplaced in light of the Ninth Circuit's conclusion that the "respective rights" language of Article 24(2) refers to local law merely the question of "who are 'the persons upon whom the action devolves in the case of death ...'" *Mexico City Aircrash,* 708 F.2d at 413–14; *see also In re Air Disaster In Lockerbie,* 733 F.Supp. 547, 551, *reh. denied, app. granted,* 736 F.Supp. 18 (E.D.N.Y.1990) ("respective rights" clause refers merely to local laws of descent and distribution).

Plaintiffs contend that even if Article 17 is read as precluding punitive damages, Article 25 removes that prohibition in cases where a plaintiff can show wilful misconduct by the carrier.[21] *Floyd* relied on "the

---

tion contemplates recovery only of compensatory damages." *Floyd* at 1487. *Cf. In re Air Disaster In Lockerbie,* 733 F.Supp. 547, 553 (E.D.N.Y. 1990) ("dommage survenu" is better translated as damage that has "happened" or "arose" rather than "damage sustained"; Convention uses "damages" to refer to monetary award). *See also In re Air Crash Disaster at Gander, Newfoundland,* 684 F.Supp. 927, 931–32 (W.D.Ky. 1987) (court's conclusion that "damage sustained" language indicated compensatory damages based in part on a mistaken belief that English translation was "dama*ges* sustained").

**17.** Article 17 states in the unofficial English translation:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

**18.** *Floyd* was followed and expanded upon by *In re Air Disaster In Lockerbie,* 733 F.Supp. 547 (E.D.N.Y.1990) which held that no claim for punitive damages could be brought directly under the Convention and stated that "allowing the application of various punitive damage laws would defeat the Warsaw Convention's primary goal of uniform and limited liability." *Id.* at 552.

**19.** "[S]tate law causes of action may be invoked by plaintiffs injured during international air transportation. *Such causes of action might,*

*consistently with the Convention, provide varying measures of damages* or varying specifications of persons entitled to recover." *In re Mexico City Aircrash,* 708 F.2d 400, 414 n. 25 (9th Cir.1983) (emphasis added). "[T]he Warsaw Convention ... does not precisely describe how to calculate damages in a wrongful death case.... *Evidently damages are to be measured according to the internal law of a party to the Convention. Mertens v. Flying Tiger Line,* 341 F.2d 851, 858 (2d Cir.1965)." *Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1002 (9th Cir. 1987) (emphasis added). *See also In re Aircrash In Bali, Indonesia,* 684 F.2d 1301, 1315 (9th Cir.1982) (rejecting claim of punitive damages because no punitive damages are allowed under *California* law in wrongful death cases—implying that damages under Convention are to be measured by local law).

**20.** Article 24 provides:

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

**21.** Article 25(1) provides:

The carrier shall not be entitled to avail himself of the provisions of this convention which ex-

structure of the Convention, the subsequent interpretation by the parties, and the unanimous case law," 872 F.2d at 1483, to conclude that Article 25 was intended to remove only Article 22's $75,000 cap, not any other limitations on liability. That conclusion however was rejected by *In re Hijacking of Pan American World Airways,* 729 F.Supp. 17, 20 (S.D.N.Y.1990). *Pan American* relied on the Supreme Court's admonishment in *Chan,* decided after the *Floyd* opinion, that extrinsic evidence of the Convention's drafters' intent may only be considered where the text is ambiguous, and even then only "clear drafting history" may contradict the text's most natural meaning. 109 S.Ct. at 1683–84 and n. 5. The *Pan American* court found Article 25's language unambiguous: "Pan Am's interpretation, if accepted, would require the Court to construe Article 25 as if it read 'the provision, to wit Article 22, ... which limits *the amount of* his liability' which would constitute a judicial alteration of the plain language of the Convention foreclosed by *Chan.*" [22] *Pan American,* 729 F.Supp. at 20. *Pan American* held, therefore, that "to the extent that Article 17 is construed to preempt a claim for punitive damages,[23] it would be a limitation or exclusion of liability within the meaning of Article 25, and such claims would not be barred in cases involving wilful misconduct." *Id.*[24]

This court also notes that Article 25's use of the phrase "exclude or limit" might be read as indicating that where wilful misconduct is shown, something more than

clude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

**22.** "[W]here the text is clear, as it is here, we have no power to insert an amendment." *Chan,* 109 S.Ct. at 1683–84.

**23.** An interpretation that the court seemed to reject.

**24.** *But see In re Air Disaster In Lockerbie,* 736 F.Supp. 18, 20 (E.D.N.Y.1990) (Article 25 ambiguous).

merely the $75,000 "limit" is waived by the carrier.

Plaintiffs contend, moreover, that allowing punitive damages would be *supportive* of the underlying purposes of the Convention. They point to Article 25's removal of liability limits in cases of wilful misconduct as evidence that the Convention sought to deter wilful misconduct. Allowing punitive damages, at least where wilful misconduct is shown, plaintiffs contend, would thus be in furtherance of the purposes of the Convention.

The weight of authority tends towards the conclusion that punitive damages are unavailable in an action governed by the Warsaw convention, even where wilful misconduct is shown.[25] The arguments raised against this conclusion, and discussed above, are not without some persuasive effect. The court is convinced that a punitive damages award, if any, would have to be preceded by a showing of wilful misconduct within the meaning of the Convention. If and when plaintiffs have made such a showing, they may again raise the issue of the availability of punitive damages, and the court will consider it at that time, but not before.

## VI. CLASS ACTION CERTIFICATION, DISCOVERY OF THE PASSENGER LIST AND RELATED ISSUES.

At the July 10, 1990 hearing on the motions considered herein, the court took up with counsel plaintiffs' request to certify under F.R.Civ.P. 23, a class of the passen-

**25.** *Pan American* appears to be the only published case which expressly permitted punitive damages to be asserted in an action involving the Warsaw Convention. *Floyd* and *In re Air Crash Disaster at Gander, Newfoundland,* 684 F.Supp. 927 (W.D.Ky.1987) appear to be the only published cases to hold expressly that claims for punitive damages under state law are precluded by the Convention. While expressly reserving judgment on the issue, *Lockerbie* seems to indicate that permitting punitive damages under local law would undermine the Convention's goals of uniformity of liability rules and limitation of liability, 733 F.Supp. at 552, and states that punitive damage awards under local law would "probably be precluded." 736 F.Supp. at 19 n. 1.

gers who have not yet sued as well as plaintiffs' request for production of the Flight 811 passenger list. Plaintiffs' counsel are, of course, interested in rounding up as many passengers as possible to press claims and defendants, in resisting this effort, hence the parties' respective positions.

Because, however, individual issues would seem to predominate in any collection of personal injury claims, it is not clear that a Rule 23 class action is suitable. In any event, no class certification motion is currently pending. Plaintiffs' memorandum in support of a prior certification motion was stricken for failure to comply with the Local Rules. That motion could, however, be renewed easily and the court has read and considered all of plaintiffs' papers on the subject.

 The court has also considered another possibility and an alternative to class certification: namely, requiring notice to the passengers who have not sued to advise them of these proceedings. In that connection, the court has considered the Supreme Court's decision in *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). There, the Supreme Court approved court-supervised notice to possible claimants under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. The Court bottomed this approval on principles of efficient case management and, indeed, there is a certain attractiveness to such an approach in the present case.

*Hoffmann–La Roche* is, however, clearly distinguishable from this case and, in any event, does not require this court to adopt that same approach here. Moreover, the court is impressed by the dissent which argues that court-initiated notice to potential claimants may represent an extraordinary and untoward expansion of federal judicial power, inconsistent with fundamental constitutional principles. Because of this concern, the undersigned is not inclined to initiate notice to potential claimants except where the Supreme Court or the Ninth Circuit has expressly authorized such notice and it is demonstrably needed. While this court in no way faults plaintiffs' counsel for seeking to gather as many

claimants as possible and does not believe that such efforts constitute improper solicitation, short of plaintiffs' satisfying the requirements for class certification under Rule 23 (which, of course, does provide for notice), it is not appropriate for this court to help plaintiffs' counsel round up more clients. There may be other grounds for production of the passenger list (e.g., identification of witnesses) or the class certification may be renewed, but the court is not prepared further to consider these matters at this time.

## VII. CONCLUSIONS.

1. General maritime law will apply to this action to the extent that it is not preempted by provisions of the Warsaw Convention, or the Death on the High Seas Act.

2. The representatives of the deceased passengers must bring their actions under the Death on the High Seas Act.

3. Non-pecuniary damages under the general maritime law are not available to DOHSA plaintiffs.

4. The court reserves judgment whether any nonpecuniary damages that may be available under the Warsaw Convention are available to DOHSA plaintiffs.

5. The Warsaw Convention precludes an award of punitive damages against United unless a showing of wilful misconduct by United is made and, after such misconduct has been established, the court may reconsider the possible recovery of such damages.

6. DOHSA plaintiffs are not entitled to a jury trial unless they can assert a cause of action under the Warsaw Convention for damages not available under DOHSA.

7. The court reserves judgment on the availability of trial by jury for any remaining claims.

8. Plaintiffs' motion for class certification and request for production of the passenger list are denied without prejudice.

IT IS SO ORDERED.