**STATE OF TENNESSEE et al.,**

v.

**UNITED STATES of America et al.**
**Civ. A. No. 2174.**

United States District Court
M. D. Tennessee, Nashville Division.
July 18, 1956.

Harold Seligman, Gen. Counsel, Tennessee Public Service Comm., Nashville, Tenn., William Waller, Atty., Nashville, Tenn., and James I. Vance Berry, Atty., Nashvile, Tenn., for plaintiffs.

Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., Arthur J. Dixon, Atty., Washington, D. C.; Prime F. Osborn, Atty., Louisville, Ky., Chas. P. Reynolds, Atty., Washington, D. C.; W. A. Miller, Asst. Gen. Counsel, Nashville, Chattanooga & St. Louis Railway, Nashville, Tenn.; Alfred T. MacFarland, Atty., Lebanon, Tenn., and Ferriss C. Bailey, Atty., Nashville, Tenn., for defendants.

Before MARTIN, Circuit Judge, and DAVIES and MILLER, District Judges.

PER CURIAM.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiffs and defendants, and, after due consideration thereof, the Court enters its findings of fact and conclusions of law, as follows:

Findings of Fact

1. This suit was instituted under Sections 1336 and 2321–2325 of Title 28 of the United States Code, and Section 1009 of Title 5 of said Code, to enjoin and set aside the order of the Interstate Commerce Commission, dated February 24, 1956, in a proceeding entitled "No. 31307, Tennessee Intrastate Freight Rates and Charges," 294 I.C.C. 633. The order was entered by the Commission purportedly under the power conferred upon it by Sections 13(4) and 15a(2) of the Interstate Commerce Act, 49 U.S.C.A. §§ 13(4), 15a(2), and required the railroads operating in Tennessee to increase their Tennessee intrastate rates on the commodities named therein to the extent necessary to remove the unjust discrimination against interstate commerce found to exist. (See Findings, and Order of February 24, 1956.)

2. In a proceeding known as Ex Parte No. 175, Increased Freight Rates, 1951, the Interstate Commerce Commission authorized the railroads of the United States to increase their interstate freight rates and charges. The Commission found that the wages of railroad employees had increased substantially, that there had been substantial increases in the taxes paid by the railroads and in the cost of materials and supplies used by them, and that increased freight rates were needed in order to provide the adequate and efficient national railway system contemplated by Section 15a(2) of the Interstate Commerce Act and the National Transportation Policy (280 I.C.C. 179; 284 I.C.C. 589).

3. The Interstate Commerce Commission in the aforesaid Ex Parte 175 proceeding having authorized, with certain exceptions not herein pertinent, an interim increase of 15% in the form of a surcharge expiring February 28, 1954, later extended to December 31, 1955 (289 I.C.C. 395), the railroads operating in Tennessee petitioned the Tennessee Public Service Commission to allow a similar increase in intrastate rates and charges. The Tennessee Commission, after extended hearings, issued orders

authorizing the petitioning carriers to increase the Tennessee intrastate rates and charges in the same percentages and amounts, and subject to the same limitations, as were authorized by the Interstate Commerce Commission in Ex Parte 175, for Southern territory interstate rates, except in the case of certain commodities, including brick and related articles, road aggregates, agricultural limestone, fertilizer and fertilizer materials. No increase in intrastate rates and charges was allowed by the Tennessee Commission for brick and related articles, agricultural limestone, road aggregates and certain other commodities not here involved. A 6% increase was allowed in the case of fertilizer and fertilizer materials.

4. Thereafter, on June 9, 1953, the railroads operating in Tennessee petitioned the Interstate Commerce Commission under the provisions of Section 13(3) and (4) and Section 15a(2) of the Interstate Commerce Act, 49 U.S.C.A., for an order requiring, in substance, that Tennessee intrastate freight rates and charges with respect to the excepted commodities be increased by the amounts necessary to reflect the same percentage increase as the Interstate Commerce Commission had authorized in Ex Parte 175 for interstate application in Southern Territory.

5. The proceeding involving Tennessee intrastate rates and charges was docketed as No. 31307, and this was a separate and distinct proceeding from Ex Parte 175, involving interstate rates and charges on a nationwide basis. Hearings were held in No. 31307 during the week of January 7, 1954, in Nashville, Tennessee, before Interstate Commerce Commission Examiner C. W. Griffin. Thereafter, the Examiner issued a proposed report in which he found that all of the increases in intrastate freight rates and charges as requested by the railroads operating in Tennessee should be authorized.

6. On April 20, 1955, following exceptions to the Examiner's Report and oral argument, the Interstate Commerce Commission issued a report in No. 31307 finding that the present intrastate freight rates and charges in Tennessee on brick and related articles, agricultural limestone, road aggregates, except sand and gravel into Nashville, and fertilizer materials to destinations at which fertilizers are manufactured, as well as certain other commodities, are generally lower than the interstate rates and charges on the same commodities between Tennessee and points in adjoining states. The Interstate Commerce Commission further found that traffic thereunder failed to produce its fair share of the revenue required by the railroads to enable them to justify adequate and efficient transportation service. The Interstate Commerce Commission thereupon concluded that an undue burden had been cast upon interstate commerce and that the intrastate rates and charges caused an undue, unreasonable and unjust discrimination against interstate commerce. The Interstate Commerce Commission further found that the establishment of the increases for intrastate traffic would not result in unreasonable rates or charges and that said increase "will substantially increase" the revenues of the railroads operating in Tennessee. The report stated that an order would be entered carrying the aforesaid findings and conclusions into effect unless the Tennessee Commission permitted said increases (294 I.C.C. 633).

7. The Tennessee Commission accepted the recommendations in the Interstate Commerce Commission report of April 20, 1955, in Docket No. 31307, and ordered, on July 22, 1955, that the increase in freight rates and charges as set out in said report of the Interstate Commerce Commission be applied to Tennessee intrastate traffic, subject to the expiration date then applicable to the interim increases in interstate rates and charges under Ex Parte 175.

8. On April 15, 1955, in Ex Parte 175, the railroads petitioned the Interstate Commerce Commission to make permanent the interim increases then in effect in the form of surcharges expiring De-

cember 31, 1955. Hearings were held by the Interstate Commerce Commission in said proceeding, which involved only interstate rates and charges, and on October 17, 1955, the Interstate Commerce Commission entered an order authorizing the railroads to incorporate said increases into the permanent rate structure, thereby eliminating the surcharge (297 I.C.C. 17).

9. On September 7, 1955, the railroads operating in Tennessee petitioned the Tennessee Commission to make permanent the interim increases authorized by said Tennessee Commission corresponding with the Ex Parte 175 increases, expiring December 31, 1955. Following the order of the Interstate Commerce Commission in Ex Parte 175, entered October 17, 1955, said railroads filed an amended petition, calling the attention of the Tennessee Commission to the action of the Interstate Commerce Commission and reiterating the aforesaid request with respect to intrastate rates and charges.

10. The Tennessee Commission set the petition and amended petition of the railroads down for hearing on November 30, 1955, at which time the railroads and certain shippers appeared and introduced evidence. On the basis of the evidence, which related to conditions existing at the time of the hearing, the Tennessee Commission entered an order on December 30, 1955, making permanent the increases previously authorized, with certain exceptions. The order prescribed that the aforesaid increases should not thereafter be applied as surcharges, but should be incorporated in the permanent rate structure. Said order included a recitation of the evidence relating to commodities here involved, and on the basis of said evidence, the Tennessee Commission concluded as follows:

"In view of the testimony of the shipper witnesses, and the complete absence of any testimony or exhibits on behalf of the rail carriers which would show the results of operations by railroads since the granting of the 15% increase on July 15, 1955,

and for the years prior thereto during which time the increases in intrastate rates were not effective, the Commission is of the opinion, based upon the record in the instant cause and the former cause in Docket R–3160, that the excepted commodities should be exempt from any intrastate increases in Tennessee.

"The Commission is aware of the findings in ICC Docket 31307, but, nevertheless feels the burden is upon the petitioner carriers to prove the necessity of the increased rates and particularly in view of the findings in the 13th section proceeding (ICC Docket 31307 April 20, 1953). Such a burden was in no way carried and the shippers of these commodities have in turn made a strong case in behalf of the elimination of the increases in Tennessee."

On the basis of these conclusions, the Tennessee Commission excepted from the permanent increases the commodities involved in this proceeding, to-wit:

"(a) Brick and related articles as described in Item 3300, 3301, 3396 and 3401, series as amended of Southern Freight Tariff Bureau Tariff 763–B Agent Spaninger's ICC 1278;

"(b) Road aggregates and other commodities as described in Items 400 and 401 Series, as amended, of Southern Freight Tariff Bureau Tariff 388–G (Sand and Gravel Tariff) Agent Spaninger ICC 998 to the extent said commodities are included in the commodity description shown in Appendix No. 1 hereto in open top cars, applicable to the distance scale of rates, published in Table 15 of Supplement 256 to SFTB Tariff 388–G Agent Spaninger's ICC 998 (Generally known as the New Orleans Scale) without Ex Parte increases;

"(c) Fertilizer and Fertilizer Materials."

The aforesaid (b) classification included agricultural limestone.

11. On January 30, 1956, the railroads operating in Tennessee filed with the Interstate Commerce Commission a petition under Docket No. 31307, seeking the entry of an order putting into effect with respect to the excepted commodities the findings and conclusions of the Commission as set forth in the report of April 20, 1955. The Tennessee Commission filed a motion to dismiss said petition on the ground, among others, that the Interstate Commerce Commission had no authority to enter such an order without an investigation and hearing, but prayed that if said motion to dismiss were disallowed, it be given opportunity to answer and be heard. This motion to dismiss, which was joined in by the shippers who are intervening plaintiffs in this case, was disallowed by the Interstate Commerce Commission in an order entered February 24, 1956, which did not give the Tennessee Commission or the intervening plaintiffs opportunity to answer and be heard, but, summarily directed that the freight rates and charges on the excepted commodities be increased and maintained at a level no lower than the approved rates and charges for the same as found in the report of April 20, 1955, although the said report provided that "The foregoing findings and conclusions are without prejudice to the right of the authorities of the State of Tennessee, or any other interested party, to apply for modification thereof as to any specific intrastate rate or charge affected thereby on the ground that such rate or charge is not related to the interstate rates or charges on like traffic in such a way as to contravene the provisions of the Interstate Commerce Act."

## Conclusions of Law

1. The Court concludes that it has jurisdiction of this suit under Title 28, §§ 1336 and 2321 through 2325 of the United States Code, and Title 5, § 1009.

2. The Court concludes that the rates and charges under consideration in the report of the Interstate Commerce Commission dated April 20, 1955, expired on December 31, 1955, and that the order of the Interstate Commerce Commission dated February 24, 1956, prescribing intrastate rates and charges for the future on the commodities in question, was entered without an investigation and hearing. Interstate Commerce Act, Section 13; Georgia Public Service Commission v. United States, 283 U.S. 765, 771, 51 S.Ct. 619, 75 L.Ed. 1397; State of North Carolina v. United States, 325 U.S. 507, 512, 65 S.Ct. 1260, 89 L.Ed. 1760.

3. The Court concludes that the plaintiffs are entitled to a further hearing before the Interstate Commerce Commission upon evidence to be presented both by the plaintiffs and the defendants concerning the intrastate rates relating to the four commodities mentioned in paragraph 10 of these findings and conclusions. Following such hearing, the Commission will enter an appropriate report and order.

4. The injunction heretofore issued will remain in full force and effect until the Interstate Commerce Commission has filed said report and order in conformity with these findings and conclusions.

Judgment will be entered accordingly.