Ruth M. NOEL and Wm. H. Frantz, Executors of the Estate of Marshal L. Noel, Deceased, Plaintiffs-Appellants,

v.

LINEA AEROPOSTAL VENEZOLANA, Defendant-Appellee.

No. 368, Docket 24491.

United States Court of Appeals Second Circuit.

Argued May 8, 1957.

Decided Aug. 9, 1957.

Harry Norman Ball and Joseph G. Feldman, Philadelphia, Pa., and Lipper, Shinn & Keeley, New York City (Morris L. Weisberg, Philadelphia, Pa., of counsel), for plaintiffs-appellants.

William J. Junkerman and Douglas B. Bowring, New York City (Haight, Gardner, Poor & Havens, New York City, of counsel), for defendant-appellee.

Before CHASE, HINCKS and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

The narrow issue in this case is whether plaintiff may bring a civil action based on either the Warsaw Convention, 49 Stat. 3000 (1934), or the Federal Death on the High Seas Act, 46 U.S.C.A. §§ 761–767, for a death which allegedly occurred in the airspace over the high seas.

■ Since this case was disposed of on a dismissal of the complaint, the facts before us are those alleged in the complaint, as amended.

Plaintiffs, the executors of Marshal L. Noel's estate and citizens of New Jersey and Pennsylvania, brought an action in the United States District Court for the Southern District of New York on the civil side against the defendant, a corporation or entity owned by the United States of Venezuela. In their complaint, plaintiffs allege that on June 19, 1956, the decedent, Marshal L. Noel, boarded defendant's four-engine Super Constellation enroute from New York to Caracas, Venezuela. At 1:30 A.M. on June 20 when the plane was over the Atlantic Ocean approximately 30 miles from New Jersey, Noel was killed, allegedly because of defendant's "wrongful acts, neglect, default, and wilful misconduct." In their original complaint, plaintiffs alleged that the plane crashed into the sea and that Noel died in the water. The action was based on the Warsaw Convention and the Federal Death on the High Seas Act, and plaintiffs demanded a jury trial.

Judge Cashin dismissed the original complaint for lack of jurisdiction over the subject matter on the ground that (1) actions under the Federal Death on the High Seas Act are cognizable only in admiralty; (2) the Warsaw Convention does not create an independent right of action. Judge Cashin noted that "it is not contended that the admiralty forum would deny to the plaintiffs their substantive cause of action for wrongful death." [144 F.Supp. 361.]

Plaintiffs then amended their complaint to allege that the death occurred in the airspace *over* the high seas. They contended that because the death occurred over the water, an action based thereon cannot be brought in an admiralty forum, and if the jurisdiction for actions under the Federal Death on the High Seas Act is exclusively admiralty, then

they are without a remedy and that in such circumstances the Warsaw Convention grants them a right of action. Defendants objected to plaintiffs' procedure in amending the complaint and moved again to dismiss on the merits. Judge Cashin, choosing to dispose of the case on the jurisdictional, rather than the procedural grounds, ruled that there should be no material difference between deaths in or above the water, and adhered to his original decision. 154 F.Supp. 162. For a different and narrower reason, we affirm.

### 1. *The Warsaw Convention.*

■■ Plaintiffs allege first that under New York law, Article 17 of the Warsaw Convention creates an independent right of action [1] and since this complaint alleges diversity jurisdiction, under Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477, we must follow the law of New York and also hold that the Warsaw Convention provides an independent right of action. We do not agree.

Although jurisdiction of the first count under the Warsaw Convention is allegedly based on diversity, the law to be applied in this case is not state law but a federal treaty. It is applied in the state courts not because it expresses a state policy which a federal court must follow, but because it expresses federal policy which a state court must follow. And in interpreting a federal treaty, the federal courts are certainly not bound by state court interpretations.[2]

■ In any event, we agree with our prior decision in Komlos v. Compagnie Nationale Air France, 2 Cir., 1953, 209 F.2d 436, 438, which impliedly agreed with Judge Leibell's decision. Komlos v. Compagnie Nationale Air France, D.C.S.D.N.Y.1952, 111 F.Supp. 393, that the Convention did not create an independent right of action. As Judge Leibell pointed out, Secretary of State Hull's letter to President Roosevelt, dated March 31, 1934, indicated that the effect of Article 17 on which plaintiffs rely for their argument was only to create a presumption of liability, leaving it for local law to grant the right of action.[3] As one authority has stated, the purpose of the Convention was only "to effect a uniformity of procedure and remedies." Orr, The Warsaw Convention, 31 Va.L. Rev. 423 (1945); see also Comment, Air Passenger Deaths, 41 Corn.L.Q. 243, 255–60 (1956); Fixel, The Law of Aviation, § 23 (1948).

Plaintiffs, relying on a dictum in Judge Leibell's opinion in Komlos, 111 F.Supp. at page 393, argue that where the law of the place of the injury provides no right of action or where there is no law of the place of injury the Warsaw Convention provides one. They then argue that the Federal Death on the High Seas Act does not grant them a right of action,

---

**1.** Article 17

"The carrier shall be liable for damages sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

**2.** As a matter of fact, New York law does not favor the plaintiffs. Although Salamon v. Koninklijke Luchtvaart Maatschappij, Sup.1951, 107 N.Y.S.2d 768, affirmed, 1st Dept.1953, 281 App.Div. 965, 120 N.Y.S.2d 917 does hold that the Warsaw Convention creates a right of action, Wyman v. Pan American Airways, 1943, 181 Misc. 963, 43 N.Y.S.2d 420, affirmed, 1st Dept.1944, 267 App.Div.

947, 48 N.Y.S.2d 459 holds to the contrary and the latter decision was affirmed by the New York Court of Appeals, 293 N.Y. 878, 59 N.E.2d 785, certiorari denied, 1944, 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432.

**3.** "The effect of article 17 (ch. III) of the Convention is to create a presumption of liability against the aerial carrier on the mere happening of an accident occasioning injury or death of a passenger subject to certain defenses allowed under the Convention to the aerial carrier. The burden is upon the carrier to show that the injury or death has not been the result of negligence on the part of the carrier or his agents. * * *" 1934 U.S.Av.Rep. 240, 243.

for that does not apply to deaths in the airspace.

We see no justification for such a reading of the Convention. The language of Article 17 does not indicate any difference between situations where the law of the place of injury does grant a right of action and where it does not. See Comment, 41 Corn.L.Q. at 256. Nor does the history of the Convention support this dictum. Thus, regardless of whether the Federal Death on the High Seas Act provides a remedy, Article 17 does not.

2. *The Federal Death on the High Seas Act.*

■ Plaintiffs' second count is under the Federal Death on the High Seas Act. They argue in the alternative that the Federal Death on the High Seas Act does grant them a right of action and that it may be brought on the civil side. See Choy v. Pan American Airways Co., D.C. S.D.N.Y., 1941 A.M.C. 483. We do not find it necessary to pass on the question of whether the Act grants a right of action for deaths in the airspace,[4] for we conclude that any rights created by that Act are cognizable only in admiralty and hence the action was correctly dismissed from the civil side.

Plaintiffs contend that the phrase in the statute, "may maintain a suit for damages * * * in admiralty," means that a plaintiff may sue either at law or in admiralty. But the language and legislative history make it very clear that the permissive element relates solely to the grant of the right and not to the

forum. Whereas before the Act a party could not sue under federal law for death on the high seas at all, now he may. Higa v. Transocean Airlines, 9 Cir., 1955, 230 F.2d 780; Wilson v. Transocean Airlines, D.C.N.D.Cal.1954, 121 F.Supp. 85; Iafrate v. Compagnie Generale Transatlantique, D.C.1952, 106 F.Supp. 619; see Comment, 41 Corn.L.Q. at 248–50.

Other sections of the Act support this conclusion. Thus, the survival section refers to "pendency in a court of admiralty," and if suit could be maintained in other forums, there would be no reason to restrict the survival provision in this manner. Moreover, the legislative history also supports this reading. See 59 Cong.Rec. 4482–84 (1920). Whatever the merits and demerits of the admiralty forum, see Comment, 55 Col.L.Rev. 907, 912–16 (1955), the statutory language and the legislative history are clear.

To summarize: the first count fails to state a cause of action under New York law; the second count, under the Federal Death on the High Seas Act, cannot be brought on the civil side of the District Court; the third count fails to state a cause of action as the Warsaw Convention created no right of action. Accordingly we affirm the dismissal of the complaint but without prejudice to plaintiff's right to transfer the case to the admiralty side of the court for adjudication of the second count of the amended complaint. We express no opinion as to whether the Death on the High Seas Act grants a right of action in admiralty for death in the airspace.

---

4. That problem raises grave constitutional questions as to the permissible scope of admiralty jurisdiction. See Comment, 55 Col.L.Rev. at 917 n. 85, 920 n. 80; Bogert, Problems of Aviation Law, 6

Corn.L.Q. 271, 303–05 (1921); Veeder, Legal Relations between Admiralty and Aviation, 2 Air.L.Rev. 29 (1931); cf. Wilson v. Transocean Airlines, D.C.N.D. Cal.1954, 121 F.Supp. 85.