In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 23-2358 & 23-2359

IN RE: LION AIR FLIGHT JT 610 CRASH

APPEAL OF: LAURA SMITH, as duly appointed representative and Independent Administrator of the ESTATE OF ANDREA MANFREDI, deceased, et al.

———————————————————————

APPEAL OF: TERRENCE BUEHLER, Personal Representative and Independent Administrator of the ESTATE OF LIU CHANDRA, deceased.

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 1:18-cv-07686, 1:19-cv-07091, 1:19-cv-01552 —
**Thomas M. Durkin**, *Judge*.

———————————

ARGUED FEBRUARY 16, 2024 — DECIDED AUGUST 6, 2024

———————————

Before RIPPLE, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

RIPPLE, *Circuit Judge*. These two consolidated cases arose from the crash of a Boeing commercial jet aircraft into the Java

Sea off the coast of Indonesia. Everyone on board died. The plaintiffs are family members and representatives of the estates of two passengers on that flight. They brought these actions against Boeing and other defendants.

Boeing filed pretrial motions in each of these cases, raising two issues, both of which are properly before us in this interlocutory appeal certified under 28 U.S.C. § 1292(b). First, is the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301–08, the sole source of potential recovery for the plaintiffs, or can the plaintiffs assert other claims as well? Second, are the plaintiffs entitled to a jury trial? The district court concluded that the plaintiffs can only proceed under DOHSA and that they are not entitled to a jury trial. We agree with the district court and affirm its rulings.

# I

## BACKGROUND

On October 29, 2018, Lion Air Flight JT 610 took off from Jakarta, Indonesia. Almost immediately after takeoff, the passengers began experiencing the aircraft's erratic movements and fluctuations in altitude due to mechanical issues with the plane, a Boeing 737 MAX. After a few minutes, the plane flew out over open water, and approximately five minutes after that, it crashed into the Java Sea, about eighteen miles off of the coast of Indonesia. There were no survivors. Boeing has admitted that a manufacturing defect in its 737 MAX plane caused the crash.

The two cases before us were brought by the families and representatives of the estates of two passengers who died in the crash: Liu Chandra, an Indonesian businessman, and Andrea Manfredi, an Italian entrepreneur and professional

cyclist. The Chandra case was filed initially in Illinois state court. Boeing subsequently removed it to the United States District Court for the Northern District of Illinois without objection. The sole plaintiff in the Chandra matter is a representative of both Mr. Chandra's estate and Mr. Chandra's heirs. In the operative amended complaint, the representative has named as defendants two United States government agencies, three individuals, and four private entities, one of which is Boeing. The representative asserted claims on behalf of both Mr. Chandra's estate and Mr. Chandra's family members under DOHSA; the Suits in Admiralty Act, 46 U.S.C. §§ 30901–18; and Illinois state law. He demanded a jury trial and asserted that the district court has jurisdiction based on diversity; DOHSA; the Suits in Admiralty Act; and the Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA"), 28 U.S.C. § 1369.

The Manfredi case was filed initially in the United States District Court for the Northern District of Illinois. The plaintiffs in that case are family members of Mr. Manfredi and a representative of Mr. Manfredi's estate (collectively, the "Manfredi Plaintiffs"). The Manfredi Plaintiffs asserted claims under state law and under the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030, on behalf of both Mr. Manfredi's estate and Mr. Manfredi's family members. The Manfredi Plaintiffs demanded a jury trial and alleged that the district court has jurisdiction based on both diversity and the MMTJA.

Boeing filed motions in both cases asking the district court to rule that DOHSA applies, preempts all of the plaintiffs' non-DOHSA claims, and mandates a bench trial. The district court granted Boeing's motions. The district court first

explained that DOHSA applies to all cases, like this one, where the decedent died on the high seas. The court then held that DOHSA preempted the plaintiffs' non-DOHSA claims. It explained that, where DOHSA applies, it is generally the exclusive remedy. The court reasoned that, under this principle, the plaintiffs' claims for their decedents' pre-death pain and suffering and lost property could not proceed. Accordingly, the court dismissed all state-law-based claims for pre-death pain and suffering, emotional distress, and lost property. It also dismissed all federal and state fraud claims.

The district court then considered whether the plaintiffs were entitled to a jury trial. The court ruled that Congress has "explicitly limited DOHSA to 'a civil action in admiralty,' which does not carry the right to a jury trial." *In re Lion Air Flight JT 610 Crash*, No. 18-cv-07686, 2023 WL 3653218, at *7 (N.D. Ill. May 25, 2023) (quoting 46 U.S.C. § 30302). It rejected the plaintiffs' argument that their DOHSA claims could be brought as non-admiralty claims because there were non-admiralty sources of jurisdiction. It accordingly concluded that DOHSA precluded a jury trial on the plaintiffs' claims and granted Boeing's request for a bench trial.

The plaintiffs asked the district court to certify an interlocutory appeal under 28 U.S.C. § 1292(b). They identified the question of whether they are entitled to a jury trial as the question warranting interlocutory review. The representative in the Chandra case additionally submitted that the question of whether DOHSA preempted their non-DOHSA claims was another question warranting interlocutory review. The court certified for immediate interlocutory appeal the question whether a plaintiff is entitled to a jury trial under DOHSA. The district court declined to certify the preemption issue.

## II

## DISCUSSION

### A.

A court of appeals may, in its discretion, permit an appeal to be taken from an order certified for interlocutory appeal by a district court. *See* 28 U.S.C. § 1292(b). The order must present a "controlling question of law," difficult enough to leave "substantial ground for difference of opinion," and whose resolution will "materially advance the ultimate termination of the litigation." *Id.* In such an appeal, although the district court must identify a "controlling question of law," our authority extends past answering that question. *Id.*; *see Martin v. Goodrich Corp.*, 95 F.4th 475, 478 (7th Cir. 2024). The appeal presents *the order* for appellate decision, and a court of appeals "may address any issue fairly included within the certified order." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

Here, the district court certified the jury trial question for interlocutory review. We agree with the district court that this issue is suitable for interlocutory review. As we noted earlier, the district court declined to certify the preemption question for interlocutory review. But, because that issue was decided in the same order, we can decide that question, and indeed should resolve it because resolution of that issue will influence significantly our decision on the jury trial question. There is authority that parties in admiralty cases can have a jury trial on claims that would otherwise be tried by the court, if their claims arise out of the same set of facts as a claim that can be tried before a jury. *See Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 21 (1963) (concluding that, when a Jones Act claim

and a maintenance and cure claim arise from the same accident, district courts must allow a jury trial, even if the maintenance and cure claim is cognizable only in admiralty); *Red Star Towing & Transp. Co. v. The "Ming Giant"*, 552 F. Supp. 367, 374–75 (S.D.N.Y. 1982) (concluding that a jury should decide both DOHSA and Jones Act claims, in case in which plaintiffs asserted both types of claims); *Gvirtsman v. W. King Co.*, 263 F. Supp. 633, 634–35 (C.D. Cal. 1967) (same). Therefore, if the plaintiffs have valid non-DOHSA claims, then the district court presumably should have allowed the plaintiffs to try those claims and their DOHSA claims before a jury. On the other hand, if DOHSA preempts the other claims, then the availability of a jury trial turns on whether DOHSA permits the plaintiffs to demand a jury trial. Accordingly, we will address both issues, starting with preemption.

### B.

Before 1920, relatives of persons who died on the "high seas"—waters far enough from any coast to be outside the territorial waters of a state or country—generally had no remedy. *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 393 (1970). As a result, the family members of victims of high-seas disasters like the sinking of the Titanic had no means of recovery. *See* Robert M. Hughes, *Death Actions in Admiralty*, 31 Yale L.J. 115, 117 (1921).

DOHSA, enacted in 1920, helped to fill this void. DOHSA provides that, "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas …, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible." 46 U.S.C. § 30302. Claims under DOHSA can be brought in

federal court or in state court. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232 (1986).

DOHSA functions as a wrongful-death statute in that it gives "surviving relatives a cause of action for losses *they* suffered as a result of the decedent's death." *Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 123 (1998). Survivors whose losses can be remedied in a DOHSA action include "the decedent's spouse, parent, child, or dependent relative." § 30302. DOHSA is not a survival statute. A survival statute "permits a decedent's estate to recover damages that the decedent would have been able to recover but for his death." *Dooley*, 524 U.S. at 123. Unlike survival statutes, "DOHSA does not authorize recovery for the decedent's own losses." *Id.* at 122.

The Supreme Court has held that, where DOHSA applies, it preempts all wrongful-death remedies otherwise available under state law and general maritime law. *See Offshore Logistics*, 477 U.S. at 232 (state law); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 624–25 (1978) (general maritime law). Although the plaintiffs included in their complaints many state-law wrongful-death claims, they now concede that DOHSA preempts those claims.

They continue to contend, however, that some of their state-law *survival* claims are not preempted by DOHSA. As they acknowledge, this contention must grapple with *Dooley v. Korean Air Lines*, *supra*. In *Dooley*, plaintiffs sought to recover damages under state law for pain and suffering that their relative, who died on the high seas, experienced shortly before his death. The plaintiffs argued that DOHSA did not preempt their claims because, in their view, DOHSA had no "bearing on the availability of a survival action." *Id.* at 123. The Supreme Court disagreed, stating that "DOHSA

expresses Congress' judgment that there should be no such cause of action in cases of death on the high seas." *Id.* The Court explained that, in DOHSA, "Congress provided the exclusive recovery for deaths that occur on the high seas." *Id.* Because "Congress ha[d] spoken on the availability of a survival action," *id.* at 124, the Court held that the plaintiffs could not pursue their state-law survival claims for their decedent's pre-death pain and suffering.

The plaintiffs contend that, despite *Dooley*, they can seek two types of damages on behalf of their decedents' estates. First, the plaintiffs contend that they can seek damages for the pain and suffering that their decedents experienced on the over-land portion of the flight. It is difficult, however, to see how this could be a separate claim than a claim for pain and suffering the decedents experienced over water, minutes later. This position is also inconsistent with decisions of other courts that plaintiffs cannot avoid DOHSA preemption merely by showing that a fatal accident on the high seas had some connection to land. *See, e.g.*, *LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1357 (11th Cir. 2020) (accident was governed by DOHSA because the plane crashed into the high seas, even though the alleged negligence occurred on land and much of the flight was scheduled to be over land). Further, much of the language in *Dooley*—especially the reference to the congressional judgment that "there should be no [survival] cause of action in cases of death on the high seas," 524 U.S. at 123—broadly indicates that DOHSA preempts all survivor actions grounded in state law or general maritime law that are based on the same facts as the fatal accident. Second, the plaintiffs contend that they can seek damages for property their decedents lost in the crash. This claim, too, is foreclosed

by the reasoning in *Dooley* regarding survival-based claims.[1] The plaintiffs' non-DOHSA claims grounded in state law thus cannot go forward.

### C.

We now turn to the jury trial question (the question certified by the district court). We start with some background.

### 1.

This background can suitably begin in the years immediately before the Founding. In that era, individuals in the colonies with maritime claims could bring those claims either in vice admiralty courts created by Britain or in the local colonial courts. Steven L. Snell, *Courts of Admiralty and the Common Law: Origins in the American Experiment in Concurrent Jurisdiction* 204–05 (2007). This arrangement "provided the litigants with a choice," and a "potential plaintiff was able to weigh the alternatives between" the types of courts. *Id.* at 205. The vice admiralty courts had the advantage of different remedial mechanisms and often greater expertise, but, unlike in the local colonial courts, claims there were tried without juries. *Id.* at 182.

The Judiciary Act of 1789 preserved the substance, but not the precise forms, of this arrangement. In that statute, Congress gave the federal circuit courts jurisdiction over diversity cases. 1 Stat. 73, § 11. It also gave federal district courts

---

[1] Some courts have held that, under DOHSA, plaintiffs are able to recover damages approximating the value of their decedents' lost property if they can establish that the property would have become part of their inheritance. *See Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1093 (5th Cir. 1988); *Nygaard v. Peter Pan Seafoods, Inc.*, 701 F.2d 77, 80 (9th Cir. 1983). We have no occasion to address that issue today.

exclusive jurisdiction over "all civil causes of admiralty and maritime jurisdiction," including those "upon the high seas," but from this grant of exclusive jurisdiction it "sav[ed] to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." *Id.* § 9.[2]

This carve-out has been called the saving-to-suitors clause. It "saves" all *in personam* claims. *See The Moses Taylor*, 71 U.S. 411, 431 (1867). Thus, the Judiciary Act of 1789 made federal district courts the exclusive arbiter of all *in rem* maritime claims, but not of all *in personam* maritime claims. Moreover, because of the saving-to-suitors clause, unless another statute provided to the contrary, maritime plaintiffs with *in personam* claims were not required to sue in the federal district courts. Instead, if they so chose, they could sue in state court, or, if there was diversity, in federal circuit courts. *See Norton v. Switzer*, 93 U.S. 355, 356 (1876) ("Parties in maritime cases are not … compelled to proceed in the admiralty at all, as they may resort to their common-law remedy in the State courts, or in the Circuit Court, if the party seeking redress and the other party are citizens of different states."). In cases brought "at law" in state courts or the circuit courts, either party could demand a jury trial. *The Sarah*, 21 U.S. 391, 394 (1823). But in cases brought "in admiralty" in the federal district courts, absent a statute to the contrary, the trial was by the court. *Id.*

---

[2] Congress has since revised the language of the saving-to-suitors clause, but "its substance has remained largely unchanged." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001). The statute now states that "the district courts shall have original jurisdiction, exclusive of the courts of the States, of: [a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled*." 28 U.S.C. § 1333(1) (emphasis added).

The organizational landscape of the federal courts changed over time, but the basic choices available to admiralty plaintiffs generally did not. One significant change came in the Judicial Code of 1911, when Congress eliminated the federal circuit courts and transferred those courts' original jurisdiction to the federal district courts. Pub. L. No. 61-475, §§ 1, 24, 36 Stat. 1087, 1087, 1091. Consequently, common law, equity, and admiralty cases were now all brought in the same federal court. Because of the differences in the procedures formerly employed in litigating various types of cases, each federal district court now was seen as having a law side, an equity side, and an admiralty side. *See Pugent Sound Nav. Co. v. Nelson*, 41 F.2d 356, 357–58 (9th Cir. 1930). As before, absent a statute to the contrary, plaintiffs with *in personam* actions could sue in admiralty, in state court, or on the law side (if diversity existed). *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 363 (1959). Cases brought on the law side carried the right to a jury trial, whereas cases brought on the admiralty side generally did not. *Compare Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360 (1962) ("This suit being in the federal courts by reason of diversity of citizenship carried with it, of course, the right to trial by jury."), *with Fitzgerald*, 374 U.S. at 20 (noting that "the Seventh Amendment does not require jury trials in admiralty cases").

In the ensuing years, a unification process took place in federal district court practice. By 1966, this unification was complete, and since then the Federal Rules of Civil Procedure have governed all civil actions, including admiralty actions. Fed. R. Civ. P. 1, cmt. (1966). The United States district courts no longer have separate "sides." *Id.* Critically, this merger of the law, equity, and admiralty spheres of federal district court practice did not change materially the choices available to

plaintiffs with maritime claims. *See* David W. Robertson, *Admiralty Procedure and Jurisdiction After the 1966 Unification*, 74 Mich. L. Rev. 1627, 1630–31 (1976). Federal Rule of Civil Procedure 9(h), which became effective at the same time as the unification, has helped to ensure as much. Under Rule 9(h), a party whose claim is "within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground" can designate his claim as a non-admiralty, common law claim or as an admiralty claim. Fed. R. Civ. P. 9(h)(1). "One of the important procedural consequences [of that designation] is that in the civil action either party may demand a jury trial, while in the suit in admiralty there is no right to jury trial except as provided by statute." Fed. R. Civ. P. 9, cmt. (1966).

To summarize: For a long time, maritime plaintiffs generally have been able to choose the forum in which they bring *in personam* claims. Such plaintiffs generally could sue in federal admiralty courts, in state court, or if diversity existed, in the federal circuit courts (1789–1911), on the "law side" of the federal district courts (1911–1966), or by refraining from designating their claims as admiralty claims under Rule 9(h) (since 1966). In these various eras, unless a statute provided otherwise, if the plaintiff sued at law, either party could demand a jury trial, but if they sued in admiralty, the case would be tried by the court.

## 2.

With this background, we now address whether the plaintiffs are entitled to a jury trial. The plaintiffs contend that they need not assert their DOHSA claims "in admiralty," as admiralty claims. They analogize their DOHSA claims to the causes of action described in the previous section, which, as

we explained, can be brought as common-law claims if there is a non-admiralty source of jurisdiction. They contend that non-admiralty sources of jurisdiction such as diversity and the MMTJA allow them to assert their DOHSA claims "at law" and to demand a jury trial.[3] The defendants, for their part, maintain that plaintiffs with DOHSA claims in federal court can only proceed "in admiralty," without a jury trial.

Several considerations lead us to the conclusion that the defendants have the better reading of the statute. *First*, DOHSA states in its first section that a plaintiff "may bring a civil action *in admiralty*." § 30302 (emphasis added). In its original form, it similarly stated that a plaintiff "may maintain a suit for damages in the district courts of the United States, *in admiralty*." Pub. L. No. 66-165, § 1, 41 Stat. 537, 537 (1920) (emphasis added). DOHSA has never expressly stated that plaintiffs with DOHSA claims can maintain a suit at law or with the right to a jury trial. The most natural inference to draw from the combination of the express reference to a suit in admiralty and the absence of a reference to a suit at law or with a jury trial is that the cause of action created by DOHSA

---

[3] Some scholars have, over the years, agreed with various versions of the plaintiffs' position. *See* Steven F. Friedell, *Death at Sea and the Right to Jury Trial*, 48 Tul. Mar. L.J. 156 (2024) (criticizing the district court's decision in this case on the jury trial issue); Louis F. Nawrot, Jr., Note, *Admiralty: Death on the High Seas by Wrongful Act*, 47 Cornell L.Q. 632, 637 (1962) (stating that a "[p]reliminary analysis" of DOHSA "unquestionably favors concurrent jurisdiction with state and federal civil courts"); Calvert Magruder & Marshall Grout, *Wrongful Death Within the Admiralty Jurisdiction*, 35 Yale L.J. 395, 420 (1926) (stating that "a common law action [under DOHSA] … probably" could "be brought in the federal courts").

is to be brought in admiralty.[4] This natural, ordinary reading of DOHSA's first section supports the defendants' interpretation. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning.") (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)).

*Second*, courts have construed language similar to DOHSA's "may bring a civil action in admiralty" language to require cases to be brought in admiralty. Under the Ship Mortgage Act, which was enacted in 1920, mortgagees can in certain cases bring "a civil action in personam in admiralty." 46 U.S.C. § 31325(b)(2)(A). Under the Public Vessels Act, which was enacted in 1925, "[a] civil action in personam in admiralty may be brought … against the United States for damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a). Both of these statutes, like DOHSA, do not specifically address the jury trial issue. Nevertheless, claims brought under those provisions do not carry the right to a jury trial. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 4:4 (5th ed. 2011). Courts "normally presume that the same language in related statutes carries a consistent meaning." *United States v. Davis*, 588 U.S. 445, 458 (2019); *see Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019) ("This Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes."). That

---

[4] A different provision in DOHSA (46 U.S.C. § 30308(a)) allows plaintiffs to bring DOHSA claims in state court, *see Offshore Logistics*, 477 U.S. at 232, but that section does not address whether DOHSA claims that are in federal court must be brought in admiralty.

presumption applies here and supports the defendants' position.

*Third*, many other courts have for a long time agreed with the defendants that, if a case involving only DOHSA claims is in federal court, it must proceed in admiralty, without a jury trial. *See Noel v. Linea Aeropostal Venezolana*, 247 F.2d 677, 680 (2d Cir. 1957); *Higa v. Transocean Airlines*, 230 F.2d 780, 782–85 (9th Cir. 1955); *Lasky v. Royal Caribbean Cruises, Ltd.*, 850 F. Supp. 2d 1309, 1314–15 (S.D. Fla. 2012); *In re Air Disaster Near Honolulu, Hawaii on Feb. 24, 1989*, 792 F. Supp. 1541, 1547 (N.D. Cal. 1990); *Friedman v. Mitsubishi Aircraft Int'l, Inc.*, 678 F. Supp. 1064, 1065–66 (S.D.N.Y. 1988); *Favaloro v. S/S Golden Gate*, 687 F. Supp. 475, 481 (N.D. Cal. 1987); *Heath v. American Sail Training Ass'n*, 644 F. Supp. 1459, 1471 (D.R.I. 1987); *Rairigh v. Erlbeck*, 488 F. Supp. 865, 867 (D. Md. 1980).[5] The plaintiffs and the amici supporting them have not identified any decisions to the contrary.

These cases matter, in part because of the maxim that, if Congress leaves in place a unanimous or near-unanimous judicial interpretation for a sufficiently long period of time, it can be deemed to have acquiesced in or ratified that judicial interpretation. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015) ("If a word or phrase has been … given a uniform interpretation by inferior courts …, a later version of that act perpetuating the wording

---

[5] *See also LaCourse v. Def. Support Servs. LLC*, No. 16-cv-170, 2018 WL 7342153, at *2 (N.D. Fla. Oct. 31, 2018); *Modica v. Hill*, No. 96-cv-1121, 1999 WL 52153, at *2 (E.D. La. Jan. 29, 1999). *Cf. Choy v. Pan American Airways Co.*, 1941 AMC 483, 487 (S.D.N.Y. 1941) (concluding that DOHSA claims could be brought on the law side of the federal courts), *expressly abrogated by Noel v. Linea Aeropostal Venezolana*, 247 F.2d 677, 680 (2d Cir. 1957).

is presumed to carry forward that interpretation."); *United States v. Sanapaw*, 366 F.3d 492, 495 (7th Cir. 2004) (relying on Congress's thirty-year acquiescence in decisions from circuit courts).[6] Here, Congress has not made any material changes to DOHSA's first section in the nearly eighty years since the Second and Ninth Circuits decided this issue in accord with the defendants' position. Much has changed in admiralty law in the years since, but, with the exception of two minor alterations not relevant here,[7] Congress has left DOHSA's first section unchanged. This history provides additional support for our conclusion that the defendants have the better reading of DOHSA.

The plaintiffs rely on what the Supreme Court has called "the historic option of a maritime suitor pursuing a common-law remedy to select his forum." *Romero*, 358 U.S. at 371. They contend that, in admiralty law, plaintiffs bringing tort claims are presumed to be able to proceed at law, with a jury trial, and that our reading of DOHSA would violate that presumption. Our task in interpreting DOHSA, however, is not necessarily to neatly harmonize that statute with other areas of admiralty law. Instead, our task is to interpret the statute, starting with its text and the rules of construction aimed at effectuating Congress's intent. For the reasons we have provided,

---

[6] *See also Manhattan Props., Inc. v. Irving Tr. Co.*, 291 U.S. 320, 336 (1934) (concluding that congressional amendments that did not change relevant provision, in the face of consensus interpretation given by courts of appeals, ratified that judicial interpretation).

[7] *See* Pub. L. 106-181, § 404(a)(1), 114 Stat. 61, 131 (2000); Pub. L. 109-304, § 6(c), 120 Stat. 1485, 1511 (2006).

we think that the defendants' reading is most consistent with DOHSA's text and Congress's intent.

We recognize the potential anomaly in allowing defendants to effectively extinguish a plaintiff's jury trial right by removing a case to federal court. DOHSA claims, like other wrongful-death tort claims, are typically tried by juries when they are in state court. *See, e.g.*, *Curcuru v. Rose's Oil Serv., Inc.*, 802 N.E.2d 1032, 1039 (Mass. 2004); *Khung Thi Lam v. Global Med. Sys.*, 111 P.3d 1258, 1260, 1262 n.20 (Wash. Ct. App. 2005). But our analysis indicates that Congress has spoken on the issue of the availability of a jury trial on DOHSA claims in federal court.[8]

## Conclusion

For the reasons stated in this opinion, we affirm the district court's rulings.

AFFIRMED

---

[8] We note the possibility that the Chandra plaintiffs, whose claims were filed initially in state court, could have tried to object to removal, relying on certain authorities that interpret the saving-to-suitors clause to block removal of otherwise removable admiralty claims. *See Lu Junhong v. Boeing Co.*, 792 F.3d 805, 818 (7th Cir. 2015) ("Perhaps it would be possible to argue that the saving-to-suitors clause itself forbids removal, without regard to any language in § 1441."); *Riyanto v. Boeing Co.*, 638 F. Supp. 3d 902, 911 (N.D. Ill. 2022) (in a case arising out of a different plane crash in the Java Sea, relying on saving-to-suitors clause for conclusion that Boeing could not remove the case from state court to federal court). We have no occasion to address that possibility here.